[Nos. E007821, E008374. Fourth Dist., Div. Two. Mar. 17, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE MANUEL MOYA et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

---

*Parts II through IVB and V are not published as they do not meet the standards for publication contained in rules 976(b) and 976.1 of the California Rules of Court.

## COUNSEL

Charles R. Khoury, Jr., Ross Thomas, Susan Shors and Karen Kelly, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield and John H. Sugiyama, Assistant Attorneys General, Ronald E. Niver, Janelle B. Davis, Don Jacobsen and Pamela K. Klahn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—After a jury trial, all three defendants, Rigoberto Salazar Angulo (Rigo), Jose Manuel Moya (Moya) and Blanca Angulo-Rodriguez (Blanca), were found guilty of kidnapping for ransom (Pen. Code, § 209, subd. (a)[1] and conspiracy to commit kidnapping for ransom. (§§ 182, 209.) Blanca was also convicted of one count of burglary.

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

(§ 459.)[2] Defendants were each sentenced to life with possibility of parole for the conspiracy and kidnapping counts. With respect to Rigo and Moya the court ordered the life sentences for the kidnapping and conspiracy counts to run concurrently. The court, acting pursuant to section 654, stayed the life sentence on the conspiracy charge in sentencing Blanca but imposed an upper term of six years for the burglary charge to run concurrently with her life sentence on the kidnapping charge.

On appeal, defendants raise the following issues: (1) the trial court erred in admitting the prior recorded testimony of Letecia Melecio; (2) the court erred in admitting the prior recorded testimony of Vanessa Angulo Moya; (3) the court erred in its instructions regarding mistake of fact and mistake of law (CALJIC Nos. 4.35 & 4.36[3]); (4) the court failed to instruct on all of the elements of simple kidnapping; (5) the court erred in failing to instruct on the need for jury unanimity with respect to the overt acts for conspiracy (CALJIC No. 17.01); (6) the court violated section 654 in its sentencing; (7) their life sentences constitute cruel and unusual punishment; and (8) prosecutorial misconduct. We affirm the judgments of convictions, reject their contentions of cruel and unusual punishment but agree the trial court erred under section 654. Accordingly we will direct the trial court to prepare amended abstracts of judgment.

I

FACTS

On March 30, 1989, Aurora Imelda Corrales (Imelda) lived in Riverside with her husband and children, including her four-and-one-half-year-old daughter, Adriana. Around noon that day, Imelda's sister, Blanca, came to the house with her children. Shortly after arriving, Blanca and/or her daughter Vanessa went back down to the car to get a diaper bag. Imelda's children, including Adriana, went outside also. Approximately 15 minutes later, Imelda noticed that Adriana was missing. Imelda was extremely upset and eventually called the police. Blanca appeared unconcerned.

Sometime around 3 p.m. the same day, Imelda received a telephone call from a man stating that he had the child and would return her in exchange for $5,000. The man said he would call back around 6 p.m. Imelda thought the man sounded like either Moya or Rigo trying to disguise his voice.

---

[2]Because these two appeals were not consolidated until after completion of the record, much of the clerk's and reporter's transcripts for the two appeals are duplicates. Accordingly all references to the clerk's or reporter's transcripts are from the record in E007821 unless otherwise indicated.

[3]All CALJIC instructions referred to are from the fifth edition unless otherwise noted.

Imelda told the police about a dispute she had with Blanca and Moya about some missing money. Blanca and Moya had accused Imelda of taking the money and Imelda had denied it. Blanca told Imelda that she would do "whatever it takes" to find out if Imelda had the money.

The police eventually brought the defendants in for questioning. After questioning Blanca's daughter Vanessa, the police questioned Blanca. Blanca initially denied any involvement in the kidnapping of Adriana but eventually admitted that she knew where Adriana was and took the police to Rosemarie Diaz's house in El Monte where the police recovered Adriana at approximately 2:30 a.m.

During police interrogation, Blanca and Moya admitted there had been a dispute with Imelda about missing money. All three defendants eventually admitted their involvement in the incident but gave varying explanations for taking Adriana. Blanca said they wanted to scare Imelda, wanted her to know what it felt like and took Adriana because she was not being taken care of properly. Moya told police that they took the child to try to get the money back and that Blanca had told Rigo to demand a certain sum but to get whatever he could. Rigo told the police that the whole purpose was to find out if Imelda had the money.

II-IVB*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

C. *CALJIC No. 9.50—Kidnapping Instruction.*

■    Blanca contends that because simple kidnapping is a lesser included crime of kidnapping for ransom and the court failed to properly instruct the jury on all of the elements of simple kidnapping, the conviction must be reversed. Not so.

Blanca's contention the court did not fully instruct on all of the elements of simple kidnapping is premised on an incorrect reading of section 207, subdivision (a) as amended in 1990. Prior to 1990, section 207, subdivision (a) provided: "Every person who forcibly steals, takes, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." As amended in 1990, this section now provides: "Every person who forcibly, *or by any other means of instilling fear*, steals *or* takes, or *holds, detains, or* arrests any person in this state, and carries the person into another country, state, or

---

*See footnote *ante*, page 912.

county, or into another part of the same county, is guilty of kidnapping." (Italics added.)

Blanca contends: "[T]he phrase 'or by any other means of instilling fear,' in reference to the term 'forcibly,' defines the word 'forcibly' and suggests an intent that any force necessary to constitute kidnapping must instill fear in the victim." She subsequently states: "The interpretation of amended section 207 subdivision (a), most favorable to appellant is that the amended clause suggest an the [*sic*] intent which must accompany the force used in a forcible kidnap. Without the further instruction, the jury was unable to determine whether she possessed the required intent in the kidnap of Adriana." Whether Blanca is suggesting the amended section 207, subdivision (a) requires a specific intent to instill fear or whether she is contending that the use of force must actually instill fear is unclear. We reject either such contention.

Nothing on the face of the section as amended supports Blanca's contention that a defendant must intend to instill fear when he or she uses force to kidnap a victim. Simple kidnapping traditionally has been a general intent crime. (*People* v. *Thornton* (1974) 11 Cal.3d 738, 765 [114 Cal.Rptr. 467, 523 P.2d 267], overruled on other grounds, *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) Absent express language requiring a specific intent, we will not presume the Legislature intended to change simple kidnapping from a general intent crime to a specific intent crime by adding the phrase "by any other means of instilling fear."

Nor do we interpret the statute as now requiring an additional element before a conviction for kidnapping can be sustained. Prior to the amendment, kidnapping could only be sustained upon a finding that the person was taken, stolen or arrested by the use or threat of force. (*People* v. *Stephenson* (1974) 10 Cal.3d 652, 660 [111 Cal.Rptr. 556, 517 P.2d 820], overruled on other grounds, *People* v. *Pope* (1979) 23 Cal.3d 412, 426, fn. 16 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R. 4th 1].) If a person's free will was not overborne by the use of force or the threat of force, there was no kidnapping. (*Id.*, at p. 659.)

As we read the amended version of section 207, kidnapping can now be accomplished not only by the application of force or threats of force but also by other methods which instill fear. Rather than modifying and defining (and thereby limiting) the word "forcibly" as contended by Blanca, the phrase "by any other means of instilling fear" expands the types of methods by which a person can overcome the free will of his or her victim. Thus, rather than

being an additional element for the crime of kidnapping, the new language provides an alternative basis for finding a defendant guilty of kidnapping. Whether the court should have given this alternative definition of kidnapping or not, defendants cannot establish any prejudice in the failure to do so.

## V*

### SENTENCING

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI

### DISPOSITION

The trial court is directed to prepare amended abstracts of judgment reflecting stays pursuant to section 654 of the sentences for conspiracy with respect to defendant Jose Manuel Moya and defendant Rigoberto Salazar Angulo and the sentence for the burglary conviction with respect to Blanca Angulo Rodriguez. In all other respects the judgments are affirmed.

Timlin, J., and McDaniel, J.,† concurred.

A petition for a rehearing was denied April 7, 1992, and appellants' petition for review by the Supreme Court was denied June 10, 1992.

---

*See footnote *ante*, page 912.
†Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.