**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAVIER CASTRIJON-GARCIA,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney<br>General,<br>*Respondent*. | No. 09-73756<br><br>Agency No.<br>A095-733-515<br><br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 14, 2012—San Francisco, California

Filed January 9, 2013

Before: Stephen Reinhardt, Richard R. Clifton,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Reinhardt

# SUMMARY[*]

## Immigration

The panel granted Javier Castrijon-Garcia's petition for review from the Board of Immigration Appeals' decision finding him statutorily ineligible for cancellation of removal, based on the BIA's holding that a conviction for simple kidnapping, in violation of California Penal Code § 207(a), is a categorical crime involving moral turpitude.

The panel held that CPC § 207(a) does not constitute a categorical crime involving moral turpitude because it does not require an intent to injure, actual injury, or a special class of victims. The panel also found that California courts have applied CPC § 207(a) to conduct that is not morally turpitudinous, and remanded for the BIA to apply the modified categorical approach.

## COUNSEL

Gary A. Watt, Supervising Counsel; Stephen R. Tollafield, Supervising Counsel; Heidi M. Hansen Kalscheur, Student Counsel; Nolan R. Shaw (argued), Student Counsel, Hastings Appellate Project, San Francisco, California, for Petitioner.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Tony West, Assistant Attorney General, Civil Division; Mary Jane Candaux, Assistant Director; Laura M.L. Maroldy (argued), Trial Attorney, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for Respondent.

**OPINION**

REINHARDT, Circuit Judge:

Javier Castrijon-Garcia ("Castrijon")[1] petitions for review of a decision of the Board of Immigration Appeals ("BIA"), holding that his conviction for simple kidnapping under California Penal Code ("CPC") § 207(a) is categorically a crime involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I), making him statutorily ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C). We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D) to determine whether a crime involves moral turpitude. *See Nunez v. Holder*, 594 F.3d 1124, 1129 (9th Cir. 2010) ("Whether a crime involves moral turpitude is a question of law that we have jurisdiction to review pursuant to 8 U.S.C. § 1252(a)(2)(D)."). We grant the petition for review and remand to the BIA for further proceedings.

We have held that "non-fraudulent crimes of moral turpitude almost always involve an intent to harm someone, the actual infliction of harm upon someone, or an action that

---

[1] Petitioner's last name is spelled inconsistently throughout the briefs and record as "Castrijon," "Castrejon," and "Gastrejon." We use "Castrijon," the last name in the court docket.

affects a protected class of victim." *Id.* at 1131. Simple kidnapping under CPC § 207(a) does not involve any of these elements. Moreover, California courts have applied the statute to conduct that is not morally turpitudinous. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Therefore, we hold that simple kidnapping under CPC § 207(a) is not categorically a crime involving moral turpitude. We remand to allow the BIA to conduct a modified categorical analysis of Castrijon's crime. *See INS v. Ventura*, 537 U.S. 12 (2002).

## FACTUAL AND PROCEDURAL BACKGROUND

Castrijon is a native and citizen of Mexico who, according to his application for cancellation of removal, entered the United States without inspection in 1989. He has resided in the United States continuously since that time, with the exception of two short trips to Mexico in 1998 and 2003. He has three U.S. citizen children as well as U.S. citizen sisters, and his mother is a legal permanent resident.

In 2007, the Department of Homeland Security charged Castrijon with removability under 8 U.S.C. § 1182(a)(6)(A)(i), in that he was an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. He conceded removability, designated Mexico as his country of removal, and submitted an application for cancellation of removal under 8 U.S.C. § 1229b(b). The conviction records submitted as part of the application for cancellation of removal reflect that in 1992 Castrijon pled guilty to attempted kidnapping in violation of CPC §§ 664 and 207(a), and received a suspended sentence of 300 days in jail and 36 months of

probation. During a hearing before the immigration judge, he explained that the incident occurred while he was with friends and that he did not know the victim. The conviction records also reflect that in 2002 and 2005 Castrijon was convicted of driving with a suspended license.

The immigration judge issued an oral decision finding Castrijon ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C) because his conviction for attempted simple kidnapping is a categorical crime of moral turpitude in that "the language of the statute requir[ed] the element of instilling fear in the victim." The BIA affirmed in an unpublished decision. It noted that it had previously "listed kidnapping as an example of a [crime of moral turpitude], . . . found that kidnapping for ransom under the Federal Kidnapping Act involves moral turpitude," and "found that the offense of kidnapping, as defined by the California Penal Code (CPC), involves moral turpitude." The BIA identified the elements of CPC § 207(a) as: "(1) a person was unlawfully moved by use of physical force or fear, (2) the movement was without the person's consent, and (3) the movement of the person was for a substantial distance." It held that, although ransom was an element under the Federal Kidnapping Act, the lack of a ransom element in CPC § 207(a) was not relevant because "there is no requirement that a state offense match all the elements of an analogous federal offense in order to be classified as a [crime of moral turpitude]." The BIA concluded that simple kidnapping is a crime of moral turpitude because it "involves readiness to do evil and is an offense that grievously offends the moral code of mankind in its inherent nature," citing to *People v. Zataray*, 219 Cal. Rptr. 33, 39 (Cal. Ct. App. 1985). It

therefore held that Castrijon was ineligible for cancellation of removal. Castrijon now petitions for review.

## ANALYSIS

"The determination whether a conviction under a criminal statute is categorically a [crime of moral turpitude] involves two steps, to which different standards of review apply." *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010); *see also Marmolejo-Campos v. Holder*, 558 F.3d 903, 907–11 (9th Cir. 2009) (en banc) (clarifying standard of review). The first step is to identify the elements of the statute of conviction. *See Uppal*, 605 F.3d at 714. "Because '[t]he BIA has no special expertise by virtue of its statutory responsibilities in construing state or federal criminal statutes,' we review its conclusion in that regard *de novo.*" *Id.* (quoting *Marmolejo-Campos*, 558 F.3d at 907). The second step is to compare the elements of the statute of conviction to the generic definition of a crime of moral turpitude and decide whether the conviction meets that definition. *See id.* "Because the BIA does have expertise in making this determination, we defer to its conclusion if warranted, following the *Chevron* framework if the decision is a published decision (or an unpublished decision directly controlled by a published decision interpreting the same statute), and following the *Skidmore* framework if the decision is unpublished (and not directly controlled by any published decision interpreting the same statute)." *Id.*; *see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

## I.

We turn to the first step of our analysis: identifying the elements of the statute of conviction. Castrijon was convicted of attempted[2] simple kidnapping in violation of CPC § 207(a). That statute provides:

> Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping.

CPC § 207(a). "To prove a defendant guilty of kidnapping, the prosecution must establish that (1) the defendant took, held, or detained another person by using force or by instilling reasonable fear; (2) using that force or fear, the defendant moved the other person, or made the other person move a substantial distance; and (3) the other person did not consent to the movement." *People v. Burney*, 212 P.3d 639, 666 (Cal. 2009); *see also People v. Jones*, 133 Cal. Rptr. 2d 358, 362 (Cal. Ct. App. 2003). The California Supreme Court has explained that "the force used against the victim need not be physical. The movement is forcible where it is accomplished through the giving of orders which the victim feels compelled to obey because he or she fears harm or injury from the

---

**2** "We have previously looked to underlying crimes in determining whether convictions for inchoate offenses constitute crimes involving moral turpitude." *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 903 (9th Cir. 2007). Therefore, we look to the elements of simple kidnapping under CPC § 207(a) to determine whether a conviction for attempted simple kidnapping is a crime involving moral turpitude.

accused and such apprehension is not unreasonable under the circumstances." *People v. Majors*, 92 P.3d 360, 363 (Cal. 2004) (internal quotation marks and citation omitted). For example, "an implicit threat of arrest satisfies the force or fear element of section 207(a) kidnapping if the defendant's conduct or statements cause the victim to believe that unless the victim accompanies the defendant the victim will be forced to do so, and the victim's belief is objectively reasonable." *Id.* at 367.

When the victim is a person capable of giving consent, "the purpose or motive of the taking and carrying away is immaterial." *In re Michele D.*, 59 P.3d 164, 168 (Cal. 2002) (internal quotation marks, alterations and citation omitted). "The rule governing the forcible carrying of conscious persons capable of giving consent . . . makes a person who forcibly carries such a person and transports him against his will guilty of kidnap[p]ing, however good or innocent his motive or intent may otherwise be . . . ." *People v. Oliver*, 361 P.2d 593, 595 (Cal. 1961); *see also People v. Sheasbey*, 255 P. 836, 838–39 (Cal. Ct. App. 1927) (holding that "no state of mind or belief is a part of the crime of kidnap[p]ing"). This is because "[s]imple kidnapping traditionally has been a general intent crime," and does not require, for example, the intent to instill fear in the victim. *People v. Moya*, 6 Cal. Rptr. 2d 323, 325 (Cal. Ct. App. 1992). "A crime is characterized as a 'general intent' crime when the required mental state entails only an intent to do the act that causes the harm . . . ." *People v. Davis*, 896 P.2d 119, 148 n.15 (Cal. 1995). When the victim is an unresisting infant or child or other person incapable of giving consent, however, "the amount of force required to kidnap . . . is simply the amount of physical force required to take and carry the child away a substantial

distance for an illegal purpose or with an illegal intent." *In re Michele D.*, 59 P.3d at 171.

## II.

### A.

We now turn to the second step of our analysis: comparing the elements of the statute of conviction to the generic definition of a crime involving moral turpitude. The parties disagree about whether we must defer to the BIA's unpublished decision. The government argues that because, in its decision, the BIA cited to several published decisions, including *Matter of Lopez-Meza*, *Matter of P*, *Matter of Nakoi*, and *Matter of C-M-*, its decision that simple kidnapping in violation of CPC § 207(a) is a crime involving moral turpitude is entitled to *Chevron* deference. Alternatively, the government argues that the BIA decision was persuasive and is thus entitled to *Skidmore* deference. Castrijon contends that the BIA decision is not entitled to *Chevron* deference because the decision was unpublished and the "cited decisions do not construe the identical statute . . . and instead consist of boilerplate generalities and other conclusory statements." Castrijon also contends that the BIA decision does not warrant deference under *Skidmore* because its decision "lacks any real analysis and consists of a single conclusory paragraph."

We hold first that the BIA decision here is not entitled to *Chevron* deference. *Chevron* deference is afforded to an unpublished decision only when it is "directly controlled by a published decision interpreting the same statute." *Uppal*, 605 F.3d at 714. Although the BIA's unpublished decision

cites to published decisions, none interprets CPC § 207(a) and thus none directly controls. The first case cited by the BIA, *Matter of Lopez-Meza*, involved the offense of aggravated driving under the influence in violation of Arizona law. 22 I. & N. Dec. 1188 (BIA 1999). The second and third cases cited by the BIA, *Matter of P* and *Matter of Nakoi*, involved convictions under the Federal Kidnapping Act, which contains different elements than simple kidnapping under CPC § 207(a), most important being that the kidnapping be committed for "ransom or reward or otherwise." *Matter of P*, 5 I. & N. Dec. 444 (BIA 1953); *Matter of Nakoi*, 14 I. & N. Dec. 208 (BIA 1972). Finally, although *Matter of C-M-*, the fourth case cited by the BIA, involved a kidnapping conviction under the California Penal Code, the BIA did not interpret CPC § 207(a),[3] or even decide that kidnapping was a categorical crime of moral turpitude. 9 I. & N. Dec. 487 (BIA 1961). Rather, the petitioner took "no issue with the finding [by the special inquiry officer] that the offense of kidnapping, as defined by the California Penal Code, involves moral turpitude," instead arguing that he had been convicted as a juvenile and that the proceedings were therefore not criminal. *Id.* at 488. In sum, the cases cited by the BIA in its unpublished decision did not "interpret[] the same statute" and thus do not "directly control[]" the outcome here. *See Uppal*, 605 F.3d at 714. Therefore, the BIA decision is not entitled to *Chevron* deference.[4]

---

[3] In fact, is not clear that *Matter of C-M-* involved CPC § 207(a), as the BIA failed to specify under which California kidnapping statute the petitioner had been convicted.

[4] In its answering brief, the government argues that although the published decisions cited by the BIA did not interpret CPC § 207(a), the agency decision is nonetheless entitled to *Chevron* deference. It relies on

We turn to the *Skidmore* framework to determine whether we should nevertheless defer to the BIA decision to the extent it has persuasive effect. Under *Skidmore*, the weight afforded to the agency decision "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140; *see also Uppal*, 605 F.3d at 715. Here, the BIA decision is unpersuasive. It had little reasoning and its analysis of why CPC § 207(a) constitutes a crime of moral turpitude consists only of two conclusory statements. In these statements, the BIA simply repeated phrases used in a decision by the California Court of Appeal, *Zataray*, 219 Cal. Rptr. at 39, which decided that under California evidence law, a simple kidnapping conviction was admissible for impeachment purposes. Borrowing the language from that decision, the BIA said that simple kidnapping under CPC § 207(a) "involves readiness to do evil and is an offense that grievously offends the moral code of mankind in its inherent nature." This is no analysis at all; the BIA does not explain *why* simple kidnapping under CPC § 207(a) involves a readiness to do evil (or even what readiness to do evil means), or *why* it so deeply offends our moral code — especially as it is a general intent crime, *see Moya*, 6 Cal. Rptr. 2d at 325. Moreover, we have held that whether a crime has been found to be one of moral turpitude under California law is "not of great weight given the

our en banc decision in *Marmolejo-Campos*, 558 F.3d 903, to support its argument. In that case, however, we afforded *Chevron* deference to an unpublished BIA decision because it relied on "a precedential decision addressing the dispositive question of statutory interpretation at issue in this case" by interpreting the same statute, the Arizona aggravated driving under the influence statute. *Id.* at 905–06, 911.

different roles of the [crime involving moral turpitude] designation under the [Immigration and Nationality Act] and California law." *Latter-Singh v. Holder*, 668 F.3d 1156, 1163 n.4 (9th Cir. 2012).**5** The BIA's unreasoned reliance on a state court decision that is of a type that we have held "is not of great weight" because it relates to the very different issue of whether a crime is morally turpitudinous for purposes of California evidence law, lacks "power to persuade" and thus is not entitled to deference.**6** *See Saavedra-Figueroa v. Holder*, 625 F.3d 621, 627 (9th Cir. 2010) (holding that BIA decision "has no persuasive authority" and declining *Skidmore* deference where immigration judge speculated that the crime was considered heinous by the people of California without explanation and failed to address intent element); *Uppal*, 605 F.3d at 715 (declining to afford BIA decision *Skidmore* deference because its "analysis [was] neither thoroughly reasoned nor consistent with prior BIA and Ninth Circuit case law"). We therefore decline to grant deference to

---

**5** We discuss *Zataray* in more detail in part II.B. below, and conclude that its holding does not affect our moral turpitude analysis in part because the factors relied upon by the California Court of Appeal — that simple kidnapping under CPC § 207(a) involves instilling fear in the victim and is an inherently dangerous felony — fail to consider the absence of a culpable mental state.

**6** Notably, this is not the first time we have held a crime *not* to be a categorical crime of moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I) even though California courts have held the contrary under their evidentiary standard for purposes of impeachment of a defendant. *Compare People v. Elwell*, 253 Cal. Rptr. 480, 482 (Cal. Ct. App. 1988) (assault with a deadly weapon is a crime of moral turpitude under California evidentiary standard), *with Carr v. INS*, 86 F.3d 949, 951 (9th Cir. 1996) (assault with deadly weapon is not a crime involving moral turpitude under the Immigration and Nationality Act).

the unpublished BIA decision and determine *de novo* whether the elements of simple kidnapping under CPC § 207(a) meet the generic definition of moral turpitude under immigration law.

**B.**

To determine whether a given offense constitutes a crime involving moral turpitude, we apply the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See Nunez*, 594 F.3d at 1129. Under the categorical approach, we "compare the elements of the crime to the generic definition of moral turpitude and decide whether the conduct proscribed in the statute is broader than, and so does not categorically fall within, this generic definition." *Id.* at 1129 (internal quotation marks omitted). In order to hold that the statute of conviction is overbroad, we must determine that there is a "realistic probability" of its application to conduct that falls beyond the scope of the generic federal offense. *Id.*; *see also Duenas-Alvarez*, 549 U.S. at 193. "If the crime does not qualify under the categorical approach, we apply the modified categorical approach and look to the documents within the record of conviction to see whether the conviction in the particular case involved moral turpitude." *Nunez*, 594 F.3d at 1129–30.

The Immigration and Nationality Act does not define the term "crime involving moral turpitude," but "courts and the BIA have generally defined [it] as comprising crimes that are inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Robles-Urrea v. Holder*,

678 F.3d 702, 708 (9th Cir. 2012) (internal quotation marks and citation omitted).[7] "Such crimes are of two types: those involving fraud and those involving grave acts of baseness or depravity." *Id.* Fraud is not an element of simple kidnapping under CPC § 207(a), nor is it inherent in the nature of the crime. In fact, the California Supreme Court has held that when the consent of the victim is obtained through fraud alone, the defendant is not guilty of simple kidnapping. *See Majors*, 92 P.3d at 364 ("In contrast to the use of force or fear to compel asportation, asportation by fraud alone does not constitute general kidnapping in California.") (internal quotation marks and citation omitted). We therefore focus on whether simple kidnapping involves "grave acts of baseness or depravity."

We have explained that some "offenses . . . are so base, vile, and depraved that they qualify as crimes of moral turpitude even though they have no element of fraud. These offenses involve 'rather grave acts of baseness or depravity' such as murder, rape, and incest." *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1074 (9th Cir. 2007) (Reinhardt, J., concurring for the majority) (citation omitted), *overruled on other grounds by United States v. Aguila–Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc). The majority in *Navarro-Lopez* explained:

---

[7] "We have held that, at this stage of our analysis, we 'rel[y] on our own generalized definition' of moral turpitude because the BIA has failed to provide any generic definition to which we could meaningfully defer." *Nunez*, 594 F.3d at 1130–31 n.3 (quoting *Marmolejo-Campos*, 558 F.3d at 910) (alteration in original).

> Not all serious crimes meet this standard, however. Indeed, we have determined, for example, that burglary, *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1020 (9th Cir. 2005), and assault with a deadly weapon, *Carr v. INS*, 86 F.3d 949, 951 (9th Cir. 1996), do not involve moral turpitude. To be considered a crime of moral turpitude, a crime other than fraud must be more than serious; it must offend the most fundamental moral values of society, or as some would say, 'shock[ ] the public conscience.' *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) (quoting *Matter of Danesh*, 19 I. & N. Dec. 669, 670 (BIA 1988)).

*Id.* at 1074–75 (alteration in original). Ultimately, "[o]nly truly unconscionable conduct surpasses the threshold of moral turpitude." *Robles-Urrea*, 678 F.3d at 708.

Crimes of moral turpitude generally involve some "evil intent." *Mendoza v. Holder*, 623 F.3d 1299, 1302 (9th Cir. 2010). "The BIA has emphasized that evil or malicious intent is the essence of moral turpitude," and we have "upheld this emphasis on evil intent." *Latter-Singh*, 668 F.3d at 1161 (internal quotation marks, alterations, and citations omitted). A review of our past cases[8] analyzing whether particular

---

[8] Only the Fifth Circuit has decided whether kidnapping is categorically a crime involving moral turpitude, holding that it is not. *Hamdan v. INS*, 98 F.3d 183 (5th Cir. 1996). That case will be discussed *infra*. No case from our circuit has addressed whether kidnapping is a crime involving moral turpitude. One case from the First Circuit involved a removal on the ground that kidnapping was a crime of moral turpitude, but the petitioner

offenses are crimes of moral turpitude reveals that non-fraudulent crimes of moral turpitude generally involve an intent to injure, actual injury, or a protected class of victims. *Nunez*, 594 F.3d at 1131. In *Uppal*, for example, we held that a conviction for aggravated assault under § 268 of the Canada Criminal Code was not categorically a crime involving moral turpitude because "an assault statute *not* involving a specific intent to injure or a special trust relationship and *not* requiring that the assault cause death or even serious bodily injury cannot qualify as a categorical [crime of moral turpitude]." 605 F.3d at 719 (emphases in original). Similarly, in *Saavedra-Figueroa*, we analyzed a conviction for false imprisonment under CPC § 236, and held that it was not a categorical crime of moral turpitude because the statute "does not proscribe conduct that categorically causes serious harm or is directed against a protected class of persons" and "does not require the defendant to have had the intent to harm necessary for the crime to be base, vile, or depraved." 625 F.3d at 626 & n.4 (internal quotation marks omitted).

Simple kidnapping under CPC § 207(a) does not require an intent to injure, actual injury, or a special class of victims. The three elements of simple kidnapping under the statute are: "(1) the defendant took, held, or detained another person by using force or by instilling reasonable fear; (2) using that force or fear, the defendant moved the other person, or made the other person move a substantial distance; and (3) the other person did not consent to the movement." *Burney*, 212 P.3d at 666. It is a "general intent crime," and does not require, for

---

in that case conceded removability, and the issue whether her crime was categorically one of moral turpitude was not considered or decided. *Choeum v. INS*, 129 F.3d 29 (1st Cir. 1997).

example, the intent to instill fear in the victim. *Moya*, 6 Cal. Rptr. 2d at 325. The California Supreme Court has held that "the purpose or motive of the taking and carrying away is immaterial" when the victim is capable of giving consent; illegal intent or motive is required only when a child or other person incapable of consenting is kidnapped. *In re Michele D.*, 59 P.3d at 168, 171 (internal quotation marks, alterations and citation omitted). Therefore, a person can be guilty of kidnapping "however good or innocent his motive or intent may otherwise be." *Oliver*, 361 P.2d at 595; *see also People v. Bruno*, 193 P. 511, 512–14 (Cal. Ct. App. 1920) (kidnapping conviction upheld even where defendant believed that he was engaged to the victim and the victim would not object). In fact, "no state of mind or belief is a part of the crime of kidnap[p]ing," *Sheasbey*, 255 P. at 838–39, and a person can be convicted of kidnapping if he actually, but unreasonably, believed that the victim consented to the movement, *see Mayberry*, 542 P.2d at 1345; *Williams*, 841 P.2d at 965. Accordingly, the intent to cause injury is not an element of simple kidnapping.[9]

Nor does simple kidnapping involve "the actual infliction of harm upon someone, or an action that affects a protected class of victim." *Nunez*, 594 F.3d at 1131. There is no

---

[9] For this reason, our decision here is consistent with our recent decision in *United States v. Marquez-Lobos*, 697 F.3d 759 (9th Cir. 2012). In *Marquez-Lobos* we held that *Arizona's* kidnapping statute, ARS §13-1304, is categorically a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A), but only because the Arizona kidnapping statute is a *specific intent* crime that "includes the element of the 'concept of a nefarious purpose.'" *Id.* at 764; *see also* ARS § 13-1304 (listing six motives, at least one of which the accused must have to be guilty of kidnapping).

requirement that the kidnapping result in actual injury to the victim, and simple kidnapping convictions under CPC § 207(a) have been upheld even when the victims have been found to be uninjured. *See, e.g.*, *People v. Felix*, 112 Cal. Rptr. 2d 311, 314–15 (Cal. Ct. App. 2001) (kidnapping conviction upheld where defendant kidnapped victim to request a renewal of their relationship and eventually returned her home safely). Moreover, while a kidnapping under CPC § 207(a) could involve a minor victim or other person with a special trust relationship to the defendant, *see, e.g.*, *In re Michele D.*, 59 P.3d at 166 (victim was minor child), it can also involve complete strangers, *see, e.g.*, *Majors*, 360 P.3d at 361 (victim was 18-year-old girl without relationship to defendant).

Thus, simple kidnapping under CPC § 207(a) "does not categorically have anything in common with the type of crime we have normally held to involve moral turpitude. It can be committed without any intention of harming anyone, it need not result in actual harm, and it does not necessarily involve a protected class of victim." *See Nunez*, 594 F.3d at 1135. It is true that the BIA's and our cases note that some crimes involve moral turpitude because they are "intrinsically wrong (malum in se)." *Mendoza*, 623 F.3d at 1302. We have noted, however, that "not all malum in se crimes categorically involve moral turpitude." *Nicanor-Romero v. Mukasey*, 523 F.3d 992, 998 (9th Cir. 2008), *overruled on other grounds by Marmolejo-Campos*, 558 F.3d 903. Instead, we have emphasized that "both the actus reus and the mens rea must be considered in concert to determine whether the behavior they describe is sufficiently culpable to be labeled morally turpitudinous." *Id.* at 999. In fact, in concluding that kidnapping for ransom under the Federal Kidnapping Act was

a crime of moral turpitude, the BIA emphasized that the record of conviction established that the kidnapping had involved ransom. *Matter of P*, 5 I. & N. Dec. at 446–47. Even in the specific context of a kidnapping conviction, therefore, the BIA has acknowledged the importance of considering the presence of a culpable mental state in determining whether the crime is one of moral turpitude.

In sum, simple kidnapping under CPC § 207(a) does not fall within the types of cases we have previously held are categorical crimes of moral turpitude. Moreover, courts in California have applied CPC § 207(a) to conduct that is not morally turpitudinous. For example, in one case, black students at a college complained about the actions of a football coach in beating a black football player during the course of a game. *People v. Apo*, 102 Cal. Rptr. 242, 244 (Cal. Ct. App. 1972). Members of the Black Students Union demanded to meet with several administrators, who responded that only the president of the college could take action on personnel issues. *See id.* The students then surrounded the administrators and "marched from the physical education building to the administration building, a distance of 700 yards (just slightly less than four-tenths of a mile)," so that the administrators could speak with the president of the college regarding the incident. *Id.* at 244–45. During the march, some students pushed the administrators, and made threats to make them continue moving. *See id.* Several of the students who participated in the march were convicted of kidnapping. *See id.* at 245. Their convictions, which were upheld on appeal, demonstrate that simple kidnapping under CPC § 207(a) will be applied to conduct that, although criminal, is not "truly unconscionable" such that it meets the moral turpitude standard. The students in *Apo*

acted foolishly, no doubt, but their conduct cannot be said to "involve rather grave acts of baseness or depravity." *Navarro-Lopez*, 503 F.3d at 1074 (Reinhardt, J., concurring for the majority) (internal quotation marks and citation omitted).

In a more recent case, the defendant was convicted of kidnapping after he intercepted his 18-year-old niece, who had run away to go live with her boyfriend, and drove her back to his home. *People v. Garibay*, 2010 WL 2112947 (Cal. Ct. App. May 27, 2010) (unpublished). The conviction was upheld on appeal. The niece had made abuse allegations against her father, and left home to go live with her boyfriend and his parents. *Id.* at *1–*2. One night, when she and her boyfriend were returning from dinner with some friends, the defendant, his brother (the father of the girl), and two other men intercepted their vehicle. *Id.* at *1. The father grabbed the girl by the arm, threatened her friends, got her into the car the defendant was driving, and the defendant drove away, taking his brother and niece to his house. *Id.* at *2. That the defendant, the uncle of the victim, was convicted of simple kidnapping again demonstrates that CPC § 207(a) is applied to conduct that is not morally turpitudinous. The defendant acted in an unlawful manner, but assisting one's brother in bringing back a family member who has run away from home is not conduct we would classify as "truly unconscionable" such that it meets the moral turpitude standard.

These two cases demonstrate that there is a "a realistic probability, not [just] a theoretical possibility, that [California] would apply [the simple kidnapping] statute to conduct that falls outside the generic definition of [the] crime." *Duenas-Alvarez*, 549 U.S. at 193. We have held that "[t]his realistic probability can be established by showing

that, in at least one other case, the state courts in fact did apply the statute in the special (nongeneric) manner." *Nunez*, 594 F.3d at 1129 (internal quotation marks and citation omitted). Here, California courts "in fact did apply the statute in the special (nongeneric) manner" to conduct that is not morally turpitudinous. Thus, simple kidnapping under CPC § 207(a), when compared to the definition of moral turpitude, is overbroad and not limited to conduct that constitutes a crime of moral turpitude.

The government relies on a different California case, *Zataray*, 219 Cal. Rptr. at 39, to support its position that simple kidnapping is a categorical crime of moral turpitude. As explained in part II.A., the decision in *Zataray* is "not of great weight." *Latter-Singh*, 668 F.3d at 1163 n.4. The issue in *Zataray* was whether simple kidnapping was a crime of moral turpitude for purposes of California evidentiary law. 219 Cal. Rptr. at 38–39. In California, a prior conviction of an offense involving moral turpitude may be introduced for the purpose of impeachment — to show that the defendant is likely to lie under oath. *Zataray* concluded that a defendant convicted of simple kidnapping had a bad character, a readiness to do evil, and therefore had committed a crime of moral turpitude, which could be used to impeach him. *Id.* at 39. The court failed, however, to consider whether CPC § 207(a) involved the most elementary requirement for an offense to categorically constitute a crime of moral turpitude as applied in cases relating to removal and similar immigration provisions. To constitute moral turpitude in such cases, the offense must generally include a requirement of intent to injure, the infliction of actual injury, or a protected class of victims. *See Nunez*, 594 F.3d at 1131.

*Zataray* labeled *all* kidnapping as a crime of moral turpitude in part because it grievously offends the inherent "moral code of mankind." 219 Cal. Rptr. at 39. We cannot accept this sweeping hyperbolic statement, as the State itself has created a lesser category of kidnapping that does not require specific intent, the infliction of any injury, bad faith, unlawful motive, or any other element establishing that all such offenses would categorically be base, vile or depraved. *Compare* CPC § 207 *with* CPC § 209. Similarly, *Zataray* states that CPC § 207(a) is a felony dangerous to human life and that the gravamen of the offense is the victim's apprehension or fear; it does not, however, state, as required for purposes of moral turpitude under immigration law, that the defendant must be aware of the risk and consciously disregard it. *Uppal*, 605 F.3d at 718.

Our determination that CPC § 207(a) is not categorically a crime involving moral turpitude is also consistent with our recent decision in *Delgado-Hernandez v. Holder*, 697 F.3d 1125 (9th Cir. 2012), in which we held that CPC § 207(a) is categorically a crime of violence under 18 U.S.C. § 16(b) because kidnapping presents a "substantial risk that physical force . . . may be used." *Id.* at 1127–28 (quoting 18 U.S.C. § 16(b)). *Delgado-Hernandez* did not answer the question here, i.e., whether the potential use of physical force in the commission of a CPC § 207(a) kidnapping is categorically turpitudinous. It is not the case that every categorical crime of violence is also categorically a crime involving moral turpitude. *See Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1020 (9th Cir. 2005) (residential burglary is not a categorical crime of moral turpitude even though it is categorically a crime of violence), *abrogated on other grounds by Holder v. Martinez Gutierrez*, 132 S. Ct. 2011 (2012); *see also In re*

*Brieva-Perez*, 23 I & N Dec. 766, 772–73 (BIA 2005) ("Some of the most common crimes falling within the definition of a 'crime of violence' do not necessarily involve moral turpitude."), *overruled on other grounds by Judulang v. Holder*, 132 S. Ct. 476 (2011). Here, the violence inherent in a CPC § 207(a) kidnapping does not render the crime a categorical crime involving moral turpitude because the force involved or threatened is not necessarily accompanied by an evil intent. For example, in two of the cases we describe above, which constituted kidnappings under CPC § 207(a), the defendants (or their co-conspirators) used a modicum of force against the victims; in *Apo*, the defendants pushed and shoved university administrators to force them to march with the protesting students, 102 Cal. Rptr. at 244–45, while in *Garibay* the defendant's brother grabbed his daughter, who was a runaway, by the arm and forced her into the defendant's car, 2010 WL 2112947 at *1; *see also Felix*, 112 Cal. Rptr. 2d at 314–15 (upholding a defendant's conviction for kidnapping his ex-girlfriend where he took their four-year old daughter, who was in a car seat in the ex-girlfriend's car, and put her in his own car in order to convince the girlfriend to take a ride in his car to discuss reunification, and then returned both safely after a 30–45 minute drive). Yet despite the use of physical force in these cases, the actions giving rise to the kidnapping charges against the defendants under CPC § 207(a) were not "base, vile, and depraved," *Navarro-Lopez*, 503 F.3d at 1074 (Reinhardt, J., concurring for the majority), or "truly unconscionable," *Robles-Urrea*, 678 F.3d at 708, and did not "involv[e] a specific intent to injure," *Uppal*, 605 F.3d at 719, or any other form of "evil intent," *Mendoza*, 623 F.3d at 1302, as would be required for these offenses to constitute crimes of moral turpitude. Accordingly, our holding in *Delgado-Hernandez* that CPC § 207(a) is

categorically a crime of violence under 18 U.S.C. § 16(b) is fully consistent with our decision today.

Finally, we note that our holding here is in line with the holding of the Fifth Circuit, the only other circuit to have decided whether kidnapping qualifies as a categorical crime of moral turpitude. *Hamdan*, 98 F.3d 183. The Louisiana statute in that case, like the statute here, was a simple kidnapping statute.[10] The Fifth Circuit held that the

---

[10] The Louisiana simple kidnapping statute provided:

A. Simple kidnapping is:

(1) The intentional and forcible seizing and carrying of any person from one place to another without his consent; or

(2) The intentional taking, enticing or decoying away, for an unlawful purpose, of any child not his own and under the age of fourteen years, without the consent of its parent or the person charged with its custody; or

(3) The intentional taking, enticing or decoying away, without the consent of the proper authority, of any person who has been lawfully committed to any orphan, insane, feeble-minded or other similar institution.

(4) The intentional taking, enticing or decoying away and removing from the state, by any parent of his or her child, from the custody of any person to whom custody has been awarded by any court of competent jurisdiction of any state, without the consent of the legal custodian, with intent to defeat the jurisdiction of the said court over the custody of the child.

kidnapping "statute covers conduct that cannot be considered inherently morally turpitudinous, and that the analysis must extend beyond the statute to the record of conviction" to determine whether the petitioner had been convicted of a crime involving moral turpitude. *Hamdan*, 98 F.3d at 189. In other words, the Fifth Circuit held that simple kidnapping under Louisiana law is *not* categorically a crime of moral turpitude, thus requiring application of the modified categorical approach. *Id.* The Louisiana simple kidnapping statute contains different elements than CPC § 207(a), but there are sufficient similarities that the holding of the Fifth Circuit provides a clear path to the result here. The Louisiana statute requires "intentional and forcible seizing and carrying of any person." Simple kidnapping under CPC § 207(a) similarly requires that the kidnapping be accomplished "forcibly, or by any other means of instilling fear." Neither statute, however, requires the intent to cause harm, or that actual harm result. Moreover, although both the Louisiana statute and CPC § 207(a) relax the force and lack of consent requirements when the victim is a child or unable to consent, neither *requires* that the victim be from these protected groups. Given these similarities, *Hamdan* provides persuasive authority for holding that kidnapping under CPC § 207(a), like kidnapping under the Louisiana simple kidnapping statute, is not a categorical crime of moral turpitude.

---

> (5) The taking, enticing or decoying away and removing from the state, by any person, other than the parent, of a child temporarily placed in his custody by any court of competent jurisdiction in the state, with intent to defeat the jurisdiction of said court over the custody of the child.

*Id*. at 186–87 (quoting 14 L.A. Rev. Stat. § 45A).

## C.

This undoubtedly appears to be a difficult question at first glance. Kidnapping is a serious crime, and our instincts may be that it would meet the moral turpitude definition. "Not all serious crimes meet [the moral turpitude] standard, however." *Navarro-Lopez*, 503 F.3d at 1074 (Reinhardt, J., concurring for the majority). Even for serious offenses, we must look to the specific elements of the statute of conviction and compare them to the definition of crimes involving moral turpitude. Here, the elements of simple kidnapping under CPC § 207(a) "do[] not categorically have anything in common with the type of crime we have normally held to involve moral turpitude. It can be committed without any intention of harming anyone, it need not result in actual harm, and it does not necessarily involve a protected class of victim." *Nunez*, 594 F.3d at 1135. "Only truly unconscionable conduct surpasses the threshold of moral turpitude," *Robles-Urrea*, 678 F.3d at 708, and simple kidnapping, as interpreted by California courts, does not surpass that threshold. California courts have in fact applied the simple kidnapping statute to conduct that is clearly not morally turpitudinous.[11] Therefore, we hold that simple kidnapping under CPC § 207(a) is not a categorical crime of moral turpitude.

---

[11] We also note that although simple kidnapping under CPC § 207(a) is a serious crime, a defendant convicted under that statute can receive a sentence of as little as three years, or if probation is granted, one year (or less if a lesser sentence is in the interest of justice). CPC § 208. More severe sentences are reserved for more serious forms of kidnapping, such as kidnapping for ransom, robbery, or rape, which carry a possible sentence of life. CPC § 209. Here, Castrijon received only a suspended sentence of less than a year plus probation for his crime of attempt.

**D.**

"In the absence of a categorical match, we generally apply a modified categorical analysis, in which we consider whether record documents or judicially noticeable facts establish that the alien's prior conviction satisfies the generic offense." *Saavedra-Figueroa*, 625 F.3d at 628. The BIA did not reach the modified categorical approach analysis because it erroneously held that simple kidnapping under CPC § 207(a) is a categorical crime of moral turpitude. Although it seems unlikely that on the basis of this record the agency could conclude that Castrijon was convicted of a crime of moral turpitude, "we recognize that the BIA is entitled to conduct the analysis in the first instance." *Robles-Urrea*, 678 F.3d at 712. We therefore remand to the BIA to conduct the modified categorical approach.

### CONCLUSION

Because simple kidnapping under CPC § 207(a) is not categorically a crime involving moral turpitude, the BIA erred in determining that Castrijon was statutorily ineligible for cancellation of removal on that basis. We remand to the BIA to determine whether, under the modified categorical approach, Castrijon was convicted of a crime of moral turpitude.

**PETITION GRANTED and REMANDED**.