**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSUE DANIEL HERRERA, | No. 12-71462 |
| Petitioner, | Agency No. A088-673-586 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 3, 2013
San Francisco, California

Before: TROTT, THOMAS, and MURGUIA, Circuit Judges.

Josue Herrera petitions for review of the Board of Immigration Appeals'

("BIA") conclusion that his conviction under Ariz. Rev. Stat. Ann. § 13-

1202(A)(3) is categorically a crime involving moral turpitude, subjecting him to

deportation under 8 U.S.C. § 1227(a)(2)(A)(i). Because the parties are familiar

with the facts and procedural history of the case, we need not recount them here.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Because we conclude that Section 13-1202(A)(3) is not categorically a crime of moral turpitude, we grant the petition for review and remand to the BIA for it to apply the modified categorical approach.

I

In order to determine whether a criminal statute, such as Section 13-1202(A)(3) in this case, involves a crime of moral turpitude, "we apply the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575 (1990)." *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1212 (9th Cir. 2013). "Under the categorical approach, we compare the elements of the crime to the generic definition of moral turpitude and decide whether the conduct proscribed in the statute is broader than, and so does not categorically fall within, this generic definition." *Id.* (internal quotation marks omitted). This two-step process requires first identifying the elements of the statute of conviction and then comparing those elements to the generic definition of a crime of moral turpitude. *Id.* at 1208. As to the first step, we review the BIA's determination de novo. *Id.* As to the second step, where, as here, the BIA has not issued a precedential decision, and where its unpublished decision is not directly controlled by a published decision interpreting the same statute, "we defer to the BIA's determination only to the extent that it has the power to persuade (i.e. *Skidmore*

deference)." *Latter-Singh v. Holder*, 668 F.3d 1156, 1160 (9th Cir. 2012); *see also Castrijon-Garcia*, 704 F.3d at 1208.

Although not defined in the Immigration and Nationality Act, we have generally defined the term "crime of moral turpitude" "as comprising crimes that are inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Castrijon-Garcia*, 704 F.3d at 1212 (internal quotation marks omitted). These crimes generally require some "evil intent." *Id.* at 1213 (internal quotation marks omitted). Typically, non-fraudulent morally turpitudinous crimes "involve an intent to injure, actual injury, or a protected class of victims." *Id.*; *see also Turijan v. Holder*, 744 F.3d 617, 619 (9th Cir. 2014) ("[N]on-fraudulent crimes of moral turpitude 'almost always' involve the intent to injure, actual injury, or a protected class of victim." (quoting *Nunez v. Holder*, 594 F.3d 1124, 1131 (9th Cir. 2010))).

## II

Section 13-1202(A)(3) bars a person from "threatening or intimidating." Ariz. Rev. Stat. Ann. § 13-1202(A)(3). A person is guilty of violating the statute if he or she "threatens or intimidates by word or conduct: . . . [t]o cause physical injury to another person or damage to the property of another in order to promote, further or assist in the interests of or to cause, induce or solicit another person to

3

participate in a criminal street gang, a criminal syndicate or a racketeering enterprise." *Id.* The BIA summarized the elements of the crime as follows: "A conviction under that provision requires proof beyond a reasonable doubt that the accused uttered a threat or engaged in intimidating conduct for the specific purpose of promoting a criminal street gang or other joint criminal enterprise." The BIA concluded that the statute contains the requisite scienter and is morally turpitudinous because it "encompasses only that subset of threats which are made for the specific purpose of promoting gang activity or organized crime."

Herrera argues that the BIA erred both because Section 13-1202(A)(3) lacks the requisite mens rea and, in the alternative, because it encompasses conduct that is not "inherently base, vile, or depraved." Regardless of whether Section 13-1202(A)(3) contains the necessary scienter, we conclude that the statute is not categorically a crime of moral turpitude because there is a "realistic probability of its application to conduct that falls beyond the scope of the generic federal offense." *Castrijon-Garcia*, 704 F.3d at 1212 (internal quotation marks omitted). The statute encompasses conduct outside the scope of the three factors cited above: an "intent to injure, actual injury, or a protected class of victim." *Turijan*, 744 F.3d at 619.

Assuming, without deciding, that the BIA has correctly listed the elements, a person could be convicted of those elements—of uttering "a threat or engaging in intimidating conduct for the specific purpose of promoting a criminal street gang or other joint criminal enterprise"—without intending to injure or actually injuring a victim, and without targeting a protected class of victims. Indeed, the statute could encompass more than the type of depraved actions we generally label as morally turpitudinous, including the bragging, boasting, and verbal puffery that sometimes exists between rival gangs. *See, e.g.*, *State v. Hernandez*, No. 1 CA-CR 09-0627, 2011 WL 315784, at *5 (Ariz. Ct. App. Feb. 1, 2011) (affirming Hernandez's conviction under Section 13-1202(A)(3), in a separate analysis than that applied to his other convictions, because the evidence—particularly that Hernandez yelled "Who wants to box?" and exhibited tattoos—demonstrated that he "threatened or intimidated to promote" a gang). Although not necessary in every case, these three factors are almost always required to conclude a non-fraudulent crime is morally turpitudinous, *Turijan*, 744 F.3d at 619, and the government has not given us a reason to ignore them here. On similar grounds, we rejected conclusions that felony false imprisonment and simple kidnapping in California were categorically crimes of moral turpitude. *Id.* at 621 ("[T]he crime does not require any of the three factors set forth above."); *Castrijon-Garcia*, 704

F.3d at 1213. Although the BIA's decision is entitled to *Skidmore* deference, it has provided only a brief analysis that, in light of the preceding discussion, we do not deem persuasive.

## III

In sum, because Section 13-1202(A)(3) is not categorically a crime of moral turpitude, we grant Herrera's petition for review and remand to the BIA for application of the modified categorical approach. *See Castrijon-Garcia*, 704 F.3d at 1218 (concluding simple kidnapping under California law is not categorically a crime of moral turpitude and remanding to the BIA for application of the modified categorical approach in the first instance). We note that the modified categorical approach may be applied here because the statute is divisible (i.e., it "sets out one or more elements of the offense in the alternative"). *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013); *see also Rodriguez-Castellon v. Holder*, 733 F.3d 847, 852-53 (9th Cir. 2013) (applying *Descamps* in the immigration context).

**PETITION GRANTED AND REMANDED.**