[No. S077706. July 27, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE WILLY HILL, Defendant and Appellant.

**COUNSEL**

Richard Jay Moller, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Racquel M. Gonzalez, Robert M. Foster and Lora Fox Martin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—Conviction of kidnapping and carjacking generally requires proof that the perpetrator committed the criminal acts against the will of the victim, i.e., without the victim's consent. This requirement presents special problems when the victim is an infant too young to give or withhold consent. In *People v. Oliver* (1961) 55 Cal.2d 761, 768 [12 Cal.Rptr. 865, 361 P.2d 593] (*Oliver*), we found the against-the-will requirement satisfied as to a person unable to give legal consent if the criminal act "is done for an illegal purpose or with an illegal intent." We believe an analogous rule is appropriate for carjacking. Applying the rule to this case, we conclude that substantial evidence supports defendant's convictions for kidnapping and carjacking as to both an infant and the infant's mother.

### I. THE FACTS AND PROCEDURAL HISTORY

Because defendant challenges the sufficiency of the evidence to support the convictions, we view the evidence in the light most favorable to the judgment below. (*People v. Marshall* (1997) 15 Cal.4th 1, 34 [61 Cal.Rptr.2d 84, 931 P.2d 262].) So viewed, and as relevant to the issues here, the evidence shows that in the evening of April 19, 1996, January R. drove to her Spring Valley home with her seven-month-old daughter Marissa, exited the car, and reached into the passenger side to take the child from her seat. While she was unbuckling the child, defendant and William Dabney, wearing hooded jackets with bandannas over their faces, accosted her. Dabney told January to give him money. She said they could have the car but asked them to let her and the baby go. She gave Dabney her jewelry. He demanded her keys, grabbed them from her, and tossed them to defendant. Dabney and January got into the backseat, with Marissa still in the front passenger seat but no longer buckled. Defendant drove the car with all four inside.

When the car stopped, Dabney made sexual overtures to January and demanded that she take off her clothes or he would shoot the baby. Believing that Dabney and defendant would let her go if she complied, January partially undressed. Dabney pushed her onto the seat and raped her. During this time, the baby "was crying. She was in the front seat rolling back and forth because the seat wasn't buckled in." January then managed to push

Dabney away, grab the baby, open the car door, and flee. Defendant and Dabney drove away. January obtained aid from a nearby house.

A jury convicted defendant of various crimes, including kidnapping (Pen. Code, § 207)[1] and carjacking (§ 215) both January and Marissa. On appeal, defendant argued the evidence did not support the convictions for kidnapping and carjacking Marissa because the evidence was insufficient that he acted against the victim's will and by means of force or fear. Citing *Oliver, supra,* 55 Cal.2d 761, the Court of Appeal found sufficient evidence supported the kidnapping charge as to both victims, but it agreed with defendant regarding carjacking Marissa. Accordingly, it affirmed both kidnapping convictions but reversed the conviction for carjacking Marissa.

Both parties petitioned for review. We granted both petitions, limiting review to whether sufficient evidence supported the carjacking and kidnapping convictions as to the infant victim.

## II. Discussion

### A. *Kidnapping*

Section 207, subdivision (a), provides: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." ▪ As the language indicates, the statute generally requires that the defendant use force or fear. (*People v. Alcala* (1984) 36 Cal.3d 604, 622 [205 Cal.Rptr. 775, 685 P.2d 1126]; *People v. Stephenson* (1974) 10 Cal.3d 652, 659-660 [111 Cal.Rptr. 556, 517 P.2d 820].)[2] "If a person's free will was not overborne by the use of force or the threat of force, there was no kidnapping." (*People v. Moya, supra,* 4 Cal.App.4th at p. 916, citing *People v. Stephenson, supra,* 10 Cal.3d at p. 659.)

The Court of Appeal here recognized that "[a]n analytical problem arises when the person taken, for example a baby, lacks free will." How can a baby's will be overborne? We confronted this problem in *Oliver, supra,* 55

---

[1] All statutory references are to the Penal Code.

[2] These cases predate a 1990 change in the statutory language. Before 1990, section 207, subdivision (a), provided: "Every person who forcibly steals, takes, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (See *People v. Moya* (1992) 4 Cal.App.4th 912, 915 [6 Cal.Rptr.2d 323].) Although the earlier version did not contain the word "fear," the cases had held that a taking is forcible if accomplished through fear. (*People v. Alcala, supra,* 36 Cal.3d at p. 622; *People v. Stephenson, supra,* 10 Cal.3d at pp. 659-660.)

Cal.2d 761. There, the defendant was convicted of kidnapping and lewd conduct with a two-year-old child. So far as the evidence showed, "the baby went willingly with defendant" (*id.* at p. 764), but we also noted that "the baby was too young to give his legal consent to being taken by the defendant." (*Ibid.*) In this situation, we were concerned that a defendant might be convicted of kidnapping a person unable to give consent even if the defendant acted for a good purpose such as carrying the person to safety. (*Id.* at pp. 765-766.) Accordingly, we concluded that "section 207, as applied to a person forcibly taking and carrying away another, who by reason of immaturity or mental condition is unable to give his legal consent thereto, should . . . be construed as making the one so acting guilty of kidnaping only if the taking and carrying away is done for an illegal purpose or with an illegal intent." (*Id.* at p. 768.) We found the trial court's failure to instruct on this requirement prejudicial and reversed the kidnapping conviction. (*Ibid.*)[3]

The Court of Appeal here found that defendant moved Marissa with an illegal purpose and thus was guilty of her kidnapping. Defendant argues the court erred in two respects. First, he contends that, although *Oliver* requires that the taking of a child be for an illegal purpose or intent, the decision did not eliminate section 207's requirement of force or fear even as to a child.

We need not, and do not, decide whether, or to what extent, the *Oliver* decision eliminated the need to show as to a child force or fear in addition to an illegal purpose, or whether the illegal purpose itself establishes force or fear (see *Parnell v. Superior Court* (1981) 119 Cal.App.3d 392, 402-403, fn. 3 [173 Cal.Rptr. 906]), for here ample evidence of force or fear exists. Defendant and Dabney accosted January and forced her and the child to go with them. Defendant drove the car with both victims inside. This behavior constituted the use of both force and fear. Defendant contends the force and fear was directed at January, not the baby. A reasonable jury, however, could find it was directed at both. At the least, our decision in *Oliver* "indicated that in kidnapping cases the requirement of force may be relaxed where the victim is a minor who is 'too young to give his legal consent to being taken' and the kidnapping was done for an improper purpose." (*People v. Rios* (1986) 177 Cal.App.3d 445, 451 [222 Cal.Rptr. 913], citing *Oliver, supra,* 55 Cal.2d at pp. 764-766.) Here, defendant snatched the baby as well the mother. The baby certainly did not move

---

[3]Here, the trial court instructed the jury, "If the person moved away is incapable of consenting thereto by reason of immaturity or by mental condition, then the person moving such person is guilty of kidnapping only if such act was done with the specific intent to carjack or rob after moving." We note that *Oliver* does not appear to require that the jury find the defendant intended to commit any particular crime by moving the child. Rather, the defendant need only asport with "an evil and unlawful intent." (*Oliver, supra,* 55 Cal.2d at p. 765.)

herself. Dabney also threatened to shoot the baby, thus using her as leverage to force the mother's cooperation. Additionally, the car seat was unbuckled, and Marissa was rolling around on the front seat while defendant drove. We are unaware of any authority that to suffer kidnapping, a baby must apprehend any force used against her.

Defendant also argues that *Oliver*'s requirement of an illegal intent or purpose is not satisfied because his illegal intent was directed at the mother, not the child. We disagree. As the Court of Appeal found, "Even if we assume the movement of Marissa might not have been a means to commit a crime directly against *her*, it was, however, carried out as the direct result of the intent to commit a crime and, within the reasoning of *Oliver*, renders [defendant] liable for Marissa's kidnapping pursuant to Penal Code section 207."[4]

Defendant argues that he violated only section 278, not section 207. (3) Section 278 makes guilty of the crime generally called child stealing or child abduction a "person, not having a right to custody, who maliciously takes, entices away, keeps, withholds, or conceals any child with the intent to detain or conceal that child from a lawful custodian . . . ." Defendant did not violate this statute, for we see no evidence that he intended to detain or conceal Marissa from her mother. Indeed, he kept them together. Thus, we need not, and do not, decide here whether a person can be guilty of violating both statutes if the elements of each are present. (See *People v. Campos* (1982) 131 Cal.App.3d 894, 899 [182 Cal.Rptr. 698].)

For these reasons, we affirm the judgment of the Court of Appeal to the extent it finds sufficient evidence to support the conviction for kidnapping Marissa as well as January.

## B. *Carjacking*

Section 215, subdivision (a), defines carjacking as "the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either

---

[4]In 1990, the Legislature added subdivision (e)(1) to section 207, to provide that subdivisions (a) to (d) do not apply "To any person who steals, takes, entices away, detains, conceals, or harbors any child under the age of 14 years, if that act is taken to protect the child from danger of imminent harm." (Stats. 1990, ch. 55, § 1, p. 394.) Because defendant clearly acted with an illegal intent, we, like the court in *People v. Ojeda-Parra* (1992) 7 Cal.App.4th 46, 50, footnote 3 [8 Cal.Rptr.2d 634], "express no opinion on whether, as to a child, the existence of an unlawful purpose remains an element of the offense or whether the purpose of protecting the child is an affirmative defense. (See *People v. Oliver, supra,* 55 Cal.2d at p. 773 (conc. and dis. opn. of Schauer, J.).)"

permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." The Court of Appeal found insufficient evidence that Marissa, as distinct from January, was the victim of a carjacking: "In this case, seven-month-old Marissa was, in any meaningful sense, unaware that her mother's car was being taken. She had, in no meaningful sense, will which was overcome. Concepts of compulsion as a means of accomplishing the taking of the vehicle in which she was a passenger simply have no meaning. She was essentially unconscious and we conclude she could not be the victim of a robbery or carjacking."

The Attorney General argues that the Court of Appeal "inappropriately presumes that certain individuals are incapable of experienc[ing] 'will' simply because they are unable to effectively convey it. The [Court of Appeal] also presupposes that a person is only capable of forming a 'free will' at a given age or level of intelligence. However, as is manifested in an infant's first cries for food and comfort, 'free will' exists from the moment of birth, and is exhibited in various degrees throughout childhood." Defendant, in turn, argues that Marissa lacked "the requisite 'will' within the meaning of the carjacking statute . . . . Given her extremely young age and corresponding level of mental development, she might as well have been asleep."

■ We need not engage in a philosophical discussion of whether, or when, a young child is imbued with a "will," for, whatever the answer to that question, we do not believe the Legislature intended to preclude an infant from being the victim of a carjacking. Certainly, no reason in logic or policy exists for it to have done so. "In the usual case of carjacking involving multiple occupants, all are subjected to a threat of violence, all are exposed to the high level of risk which concerned the Legislature, and all are compelled to surrender their places in the vehicle and suffer a loss of transportation. All are properly deemed victims of the carjacking." (*People v. Hamilton* (1995) 40 Cal.App.4th 1137, 1144 [47 Cal.Rptr.2d 343], fn. omitted.)

As with kidnapping, an analytical problem arises when the victim is an infant. But we do not believe the solution is to conclude that an infant, lacking an independent will, cannot be the victim of a carjacking. The Legislature recently made carjacking a separate crime, and for a good reason. "[C]arjacking is a particularly serious crime that victimizes persons in vulnerable settings and, because of the nature of the taking, raises a serious potential for harm to the victim, the perpetrator and the public at large." (*People v. Antoine* (1996) 48 Cal.App.4th 489, 495 [56 Cal.Rptr.2d

530]; see also *People v. O'Neil* (1997) 56 Cal.App.4th 1126, 1133 [66 Cal.Rptr.2d 72].) The potential for harm is not less because the victim is an infant who, we may assume, is incapable of giving or withholding consent. Here, for example, Marissa faced great potential harm. A baby of seven months and unbuckled from her car seat, she was rolling around the front of a vehicle in motion. In practical effect, Marissa, like her mother, was a carjacking victim. We believe she was also a victim in legal effect. For these reasons, we conclude that an infant, like any person, *may* be the victim of a carjacking.

When applied to an infant, we believe that what the Legislature most likely meant by "against his or her will" was merely the absence of lawful consent, not an affirmative act of free will. The *Oliver* decision, concerning kidnapping's analogous, if implied, requirement that the victim's free will be overborne, points the way. *Oliver* did not require an affirmative showing that the taking was against the child's will. It sufficed if the taking was for an unlawful purpose. (*Oliver, supra,* 55 Cal.2d at p. 768.) A similar rule should apply to carjacking, except that there need be no separate requirement of an illegal purpose. Unlike kidnapping, if the remaining elements of carjacking are present, an illegal purpose will always exist. A felonious taking with the intent "to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession" (§ 215, subd. (a)), an additional requirement not inherent in kidnapping, clearly involves an unlawful intent. Accordingly, for carjacking, a taking will be considered against the "will" of an infant if it is without lawful consent.

Defendant argues that the elements of carjacking are quite similar in relevant respects to those of robbery. (§ 211 ["Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear"].) Relying on robbery cases, he argues he cannot be guilty of carjacking someone who is unconscious or otherwise unaware of the taking (e.g., *People v. Kelley* (1990) 220 Cal.App.3d 1358, 1369 [269 Cal.Rptr. 900]), and that the baby here was unaware of the taking. We disagree. The analogy between robbery and carjacking is imperfect. Unlike robbery, which requires a taking from the person or immediate presence of the *possessor* (§ 211), the Legislature expanded the taking element to a taking from the person or immediate presence of *either* the possessor *or* any passenger. (§ 215, subd. (a).) By extending carjacking to include a taking from a passenger, even one without a possessory interest (assuming the other elements of the crime are present), the Legislature has made carjacking more nearly a crime against the person than a crime against property. Moreover, unlike a robbery, a carjacking subjects an unconscious possessor or occupant of a vehicle to a

risk of harm greater than that involved in an ordinary theft from an unconscious individual. Accordingly, if the defendant used force or fear, as we found he did here, he is guilty of carjacking whether or not the victim was aware of that force or fear.[5]

Defendant also argues that we may not adopt the *Oliver* rule because to do so would impermissibly "lessen the prosecution's burden of proving guilt beyond a reasonable doubt by having fewer elements to prove than that required by the Legislature in violation of the federal and state constitutions." On the contrary, we are not reducing the prosecution's burden from what the Legislature required. We are instead determining what the Legislature did require.

In this case, defendant had no lawful consent from Marissa. The "against his or her will" requirement is thus satisfied as to her. Defendant also argues, as he did with kidnapping, that the "force or fear" requirement is also lacking. We disagree for the reasons we rejected the similar argument regarding kidnapping. Defendant and Dabney used force or fear in taking the car from the immediate presence of both January and Marissa. They were properly convicted of carjacking both victims.

Accordingly, we reverse the judgment of the Court of Appeal to the extent it found insufficient evidence to support the conviction for carjacking Marissa.

## III. Conclusion

We conclude the evidence was sufficient to support the convictions for kidnapping and carjacking both January and Marissa. Accordingly, we affirm the judgment of the Court of Appeal in part and reverse it in part and remand the matter for proceedings consistent with our opinion.

George, C. J., Mosk, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**KENNARD, J.,** Concurring.—As January R. was removing her seven-month-old daughter Marissa from her car, defendant and his codefendant

---

[5]Justice Kennard argues that the phrase in section 215, "against his or her will," refers solely to the possessor's will to the exclusion of the passenger's will. We see nothing to support this interpretation, which the parties have not advanced. Just as the analogy to robbery is imperfect, so too is an analogy to larceny. If the other elements of the crime are present, the Legislature made carjacking apply to a taking from the person or immediate presence of a passenger, not just the possessor. We need not and do not express an opinion on any hypothetical situation other than the one presented here, but we note that, to constitute carjacking, any taking must be "accomplished by means of force or fear." (§ 215, subd. (a).) It appears the Legislature intended to protect passengers without a possessory interest, as well as those persons with a possessory interest, against a forcible taking from their person or immediate presence.

accosted her and forced her back into the car with Marissa. Defendant drove the car away with all four of them inside. Defendant stopped the car; his codefendant threatened to shoot Marissa and raped her mother January. January then got out of the car and grabbed Marissa from the car. Defendant drove off with his codefendant. A jury convicted defendant of numerous crimes, including two counts of kidnapping and two counts of carjacking. He challenges the sufficiency of the evidence to support his convictions for kidnapping Marissa and for carjacking Marissa.

I agree with the majority that defendant was properly convicted under Penal Code section 207 of kidnapping the infant Marissa. In *People v. Oliver* (1961) 55 Cal.2d 761, 765, 768 [12 Cal.Rptr. 865, 361 P.2d 593], we held that kidnapping an infant or other person unable to give legal consent required both that the kidnapper forcibly take the victim away and that the kidnapper take the victim for an illegal purpose or with an illegal intent. Here, there was evidence both that defendant and his codefendant applied force to Marissa to take her away and that they did so in the course of accomplishing other crimes.

I take a somewhat different view, however, than does the majority, of defendant's argument that he cannot be convicted for violating the carjacking statute, Penal Code section 215 (hereafter section 215), with respect to Marissa because there was insufficient evidence that the carjacking was against Marissa's will.

Section 215 provides: " 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." It is modeled on the robbery statute, Penal Code section 211, which provides: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

Section 215 establishes these elements for the crime of carjacking: (1) taking a vehicle possessed by another; (2) from the presence of the possessor or a passenger; (3) "against his or her will"; (4) with intent to deprive possession; (5) and, by means of force or fear. Defendant contends there is insufficient evidence of the third and fifth elements to support his conviction.

Defendant, like the majority, reads the third element—"against his or her will"—to refer to the will of the person from whose presence the vehicle is

taken, whether that person is a possessor or a passenger. I disagree. In my view, it is more probable that the Legislature intended that phrase to refer to the will of the possessor alone.

Carjacking is a form of larceny, like robbery, and the Legislature has classified it under the heading of "Robbery" in chapter 4 of title 8 of part 1 of the Penal Code. Larceny originated as a common law crime, and since that time it has always been essential to larceny that the taking be against the will of the possessor. The 18th-century English legal scholar William Blackstone described common law larceny as follows: "It [i.e., larceny] must be a taking. This implies the consent of the owner to be wanting." (4 Blackstone's Commentaries 230, italics omitted.) Later commentators also agree: "[L]arceny, a common law crime (invented by the English judges rather than by Parliament) [was] committed when one person misappropriated another's property by means of taking it from his possession without his consent." (2 LaFave & Scott, Substantive Criminal Law (1986) § 8.1, p. 328.)

The majority, however, rejects for carjacking the requirement that the taking be against the will of the property's possessor. It concludes that it is sufficient for carjacking if a vehicle is taken against the will of the passenger, thus implicitly authorizing a conviction even if the person taking the vehicle has permission from the owner to take the vehicle. It would be a radical departure from established law to create a form of larceny lacking the essential element that the taking be done against the will of person possessing the property and instead permitting conviction for a taking that is not against the will of the possessor but that is against the will of a bystander who has no legal right to possess the property. There is no evidence that the Legislature intended to do so in enacting section 215, the carjacking statute.

The structure of the robbery statute, Penal Code section 211, from which section 215 is derived, also supports my view of section 215. Section 211 uses the phrase "against his will" to refer to the will of the person in possession of the property stolen: "the felonious taking of personal property in the possession of *another*, from *his* person or immediate presence, and against *his* will." The antecedent of each "his" in section 211 is the "another" from whose possession the property is taken.

Section 215, the carjacking statute, has the same structure as Penal Code section 211, the robbery statute. It begins with a reference to a taking of property in the possession of another, describes in whose presence the taking must occur, and then states the "against his or her will" requirement. Section 215, like section 211, uses pronouns both to identify from whom the property is taken ("from *his or her* person") and whose will the taking must

be against ("against *his or her* will"). In my view, the Legislature's use of section 211 as the template for section 215 makes it probable that the Legislature intended to retain, as the antecedent of "his or her," the "another" who is in possession of the property taken: "the felonious taking of a motor vehicle in the possession of *another,* from *his or her* person or immediate presence, . . . against *his or her* will." (§ 215, subd. (a), italics added.)

Accordingly, where as here a defendant is charged under section 215 with taking a vehicle from the immediate presence of a passenger, the question under the third element of this statute is whether the taking was against the will of the vehicle's possessor, not whether it was against the will of the passenger. Here, there is more than sufficient evidence that defendant's taking of the vehicle was against the will of its possessor, January, the mother of the infant Marissa.

Defendant also contends there is insufficient evidence that force or fear was used against Marissa to accomplish the carjacking. This question is not identical to the question of whether force or fear was used to kidnap Marissa. Kidnapping requires that force or fear be used in taking away the kidnap victim. Carjacking, by contrast, appears to require that force or fear be used in taking the vehicle away from the possessor or passenger: "the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, . . . *accomplished by means of force or fear.*" (§ 215, italics added.) The majority apparently agrees that carjacking requires a forcible taking of the vehicle from either its possessor or a passenger. (Maj. opn., *ante,* at p. 861, fn. 5.)

Assuming, without deciding, that section 215 requires that force or fear be used in taking the vehicle away, there was ample evidence of that here. Marissa's mother January forcibly removed Marissa from the vehicle out of fear for herself and Marissa and because of the force previously applied to herself and Marissa, thereby enabling defendant to take the vehicle from Marissa's presence by driving away. Given that section 215 contains no express specification as to whom must the force or fear be directed against, it is an interesting question whether the fear created in January or the force applied to her would be sufficient to support a conviction for carjacking Marissa if that force or fear had not caused the departure of Marissa from the vehicle. But that is not the case here. The force and fear created by defendant, by causing January to remove Marissa, indirectly but undeniably enabled him to take the car away from Marissa's presence as surely as if he had directly removed Marissa from the vehicle himself. This is analogous to a robbery committed when a bold and fearless person, undeterred by a

robber's threats and untouched by the robber, is restrained by fearful friends while the robber gathers the person's property and carries it away.

On this basis, I concur in the majority's affirmance of defendant's conviction under section 215 of carjacking a vehicle in which Marissa was a passenger.