WERDEGAR, J.,
Concurring and Dissenting. — I respectfully disagree with the court’s opinion insofar as it affirms the conviction for carjacking (Pen. Code, § 215)* [1] and the related special circumstance finding (§ 190.2, subd. (a)(17)(L)). By holding the phrase “immediate presence” has the same meaning for carjacking (§ 215) as for robbery (§ 211), the court makes every robbery of a car potentially chargeable as a carjacking and subject to that *998 crime’s greater punishment, without regard to the difference in culpability. In my view, section 215’s language and history do not support the holding.
Defendant killed Ellen Sailing and took her car during a home invasion robbery. When defendant entered the home, Mrs. Sailing was baking cookies in the kitchen and her car was parked in the garage. Based on these facts the People charged defendant with both robbery and carjacking. The prosecutor in closing argument told the jury the victim’s car, even though in the garage, was in her immediate presence for purposes of robbery because she could, “if not overcome by violence or prevented by fear [have] retain[ed] possession.” This statement followed the established law of robbery. (See People v. Hayes (1990) 52 Cal.3d 577, 626-627 [276 Cal.Rptr. 874, 802 P.2d 376].) But after telling the jury the same facts also proved a carjacking, the prosecutor paused to note he had “detected] a little bit of a quizzical look.” The jurors’ reaction was understandable, given the prosecutor had just described the “classic carjacking” as taking place when “you’re driving along the street, and somebody comes at you with a gun.” Over defendant’s objection, the court instructed the jury that “immediate presence” had the same meaning for both crimes, and the jury convicted defendant of both.
The proposition that a person baking in her kitchen can be carjacked should prompt quizzical looks. The English-speaking world commonly defines “carjacking” as “[t]he stealing or commandeering of an occupied car by threatening the driver with violence; theft from or abduction of a driver by such means.” (Oxford English Dict. Online (2014) <http://www.oed.com> [as of Feb. 26, 2015].) The word “carjacking,” a portmanteau of “car” and “hijacking,” reflects the common definition: To “hijack” means “to hold up and commandeer (a vehicle and its load) in transit.” (Ibid.) Notably, the Attorney General in another case has “admit[ted] that by limiting section 215 to one specific type of property, a motor vehicle, the Legislature focused on criminal conduct akin to hijacking that preys on victims in vulnerable circumstances.” (People v. Lopez (2003) 31 Cal.4th 1051, 1061 [6 Cal.Rptr.3d 432, 79 P.3d 548] (Lopez).) We relied in part on that admission in holding the offense of carjacking requires asportation of the car, and in rejecting the People’s argument to the contrary. (Id., at pp. 1062-1063.)
That concerns about carjacking as commonly defined motivated the Legislature to enact section 215 is evident from the following paragraph summarizing the proposed law’s purpose, included in virtually every Senate and Assembly committee report on the bill: “There has been considerable increase in the number of persons who have been abducted, many have been subjected to the violent taking of their automobile and some have had a gun used in the taking of the car. This relatively ‘new’ crime appears to be as much thrill-seeking as theft of a car. If all the thief wanted was the car, it would be *999 simpler to hot-wire the automobile without running the risk of confronting the driver. People have been killed, seriously injured, and placed in great fear, and this calls for a strong message to discourage these crimes. Additionally law enforcement is reporting this new crime is becoming the initiating rite for aspiring gang members and the incidents are drastically increasing.” (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 60 (1993-1994 Reg. Sess.) July 13, 1993, p. 1.) These reports are significant because they identify the problem the Legislature intended to address. “ ‘[I]t is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore provide some indication of how the measure was understood at the time by those who voted to enact it.’ ” (People v. Cruz (1996) 13 Cal.4th 764, 774, fn. 5 [55 Cal.Rptr.2d 117, 919 P.2d 731], quoting Hutnick v. United States Fidelity & Guaranty Co. (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].) Governor Wilson in signing the legislation also focused on “carjacking” as commonly understood, describing it as “a serious offense which puts all citizens at risk of grievous bodily injury or death even when they feel secure in . . . their own cars.” (Governor’s message to Sen. on Sen. Bill No. 60 (Sept. 30, 1993) 2 Sen. J. (1993-1994 Reg. Sess.) p. 3502.)
In summary, the “[legislative history . . . indicates that the carjacking statute was enacted to address a specific problem — the taking of a motor vehicle directly from its occupants.” (People v. Coleman (2007) 146 Cal.App.4th 1363, 1369 [53 Cal.Rptr.3d 505].) This court has expressly recognized as much: “The Legislature . . . made carjacking a separate crime [from robbery], and for a good reason. ‘[C]arjacking is a particularly serious crime that victimizes persons in vulnerable settings and, because of the nature of the taking, raises a serious potential for harm to the victim, the perpetrator and the public at large.’ ” (People v. Hill (2000) 23 Cal.4th 853, 859 [98 Cal.Rptr.2d 254, 3 P.3d 898] (Hill), quoting People v. Antoine (1996) 48 Cal.App.4th 489, 495 [56 Cal.Rptr.2d 530].) “ ‘In the usual case of carjacking ... , all [occupants] are subjected to a threat of violence, all are exposed to the high level of risk which concerned the Legislature, and all are compelled to surrender their places in the vehicle and suffer a loss of transportation.’ ” (Hill, at p. 859.)
Confirming its intent to address the specific problem identified in the legislative history — violent confrontations with the occupants of vehicles, often involving gangs — the Legislature set the maximum punishment for carjacking at nine years (§ 215, subd. (b)), as opposed to five years for second degree robbery (§ 213, subd. (a)(1)(B)), and authorized a 15-year enhancement for gang-related carjackings (§ 186.22, subd. (b)(4)(B), added by Stats. 1993, ch. 611, § 3, p. 3479). The Legislature also confirmed its intent to treat carjacking differently and more harshly than robbery by including passengers as victims (§ 215, subd. (a) [“from the person or *1000 immediate presence of a passenger”]), even though the companions of a robbery victim are not automatically considered victims of that crime. Implementing legislative intent, we have permitted multiple convictions when a carjacked vehicle had multiple occupants. (Hill, supra, 23 Cal.4th at pp. 858-861.)
Despite perceiving important differences between carjacking and robbery, the Legislature modeled the carjacking statute on the robbery statute. (See Lopez, supra, 31 Cal.4th at p. 1059.) To ensure the differences are respected, we have advised the lower courts that the “analogy between robbery and carjacking is imperfect” (Hill, supra, 23 Cal.4th at p. 860) and that the two statutes should not be interpreted in “lockstep” without regard to legislative intent (Lopez, at p. 1061, citing Hill, at pp. 855, 860-861). Thus, in Hill we construed the statutory phrase “against his or her will” differently for purposes of carjacking (§ 215, subd. (a)) than for robbery (§ 211) after determining the Legislature intended to protect all occupants of vehicles, including infants. (See Hill, at pp. 858-861.) Some lower courts, however, have not followed our advice in construing section 215’s “immediate presence” requirement. For example, the victim in People v. Gomez (2011) 192 Cal.App.4th 609 [121 Cal.Rptr.3d 475] (Gomez), watched from the window of his apartment as robbers who had assaulted him earlier on the grounds of the complex “carjacked” his truck parked outside. Applying robbery’s definition of “immediate presence,” the court reasoned the victim was close enough to have retained possession had he not feared another assault. (Id. at p. 624.) In People v. Hoard (2002) 103 Cal.App.4th 599 [126 Cal.Rptr.2d 855] (Hoard), the defendant entered a jewelry store, stole merchandise and an employee’s car keys, and “carjacked” the parked car. “Although [the victim] was not physically present in the parking lot when [the defendant] drove the car away,” she “could have kept possession” had she not been “forced to relinquish her car keys.” (Id. at p. 609.)
Decisions such as Gomez, 192 Cal.App.4th 609, and Hoard, supra, 103 Cal.App.4th 599, simply define carjacking in lockstep with robbery rather than effectuating the Legislature’s purpose to deter criminal conduct “akin to hijacking” (Lopez, supra, 31 Cal.4th at p. 1062) directed toward the occupants of motor vehicles. Yet here, “as in any case involving statutory interpretation, our fundamental task ... is to determine the Legislature’s intent so as to effectuate the law’s purpose” (People v. Murphy (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129]), and not to give words and phrases the same interpretation in every statute regardless of context or legislative history.
In light of the manifest purpose of section 215, “immediate presence” for purposes of carjacking must directly relate to the victim’s contemporaneous *1001 use of the vehicle. Only by using a vehicle does a person become exposed to the particular conduct the 1993 Legislature intended section 215 to discourage.[2] The Legislature’s decision to treat persons in possession of vehicles and their passengers alike as victims of carjacking further supports this interpretation. A person’s status as a passenger, and thus as a victim, necessarily depends on contemporaneous use of the vehicle. Someone who is given a ride home or to work can hardly be thought a passenger after stepping through the building’s front door. Section 215’s language and history offer no reason to believe the Legislature intended to define a larger zone of “immediate presence” surrounding the possessor of a vehicle than that which surrounds a passenger.
In conclusion, to take a car from a garage by force directed at a person inside a house is robbery but it is not a crime the 1993 Legislature would have recognized as carjacking. Accordingly, I would reverse the conviction for carjacking and the related special circumstance finding. In all other respects, I would affirm.
Liu, J., concurred.
Appellant’s petition for a rehearing was denied May 20, 2015. Werdegar, J., Liu, J., and Cuéllar, J., were of the opinion that the petition should be granted.

 All further citations to statutes are to the Penal Code.

 To construe “immediate presence” in this way would fairly include activities closely related to the use of a vehicle, such as approaching a car in a parking lot to retrieve it, entering a car, standing beside a car to pump gasoline, and exiting a car after parking.