Filed 7/25/16  P. v. Bailey CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JAMES BAILEY,<br><br>        Defendant and Appellant. | F069734<br><br>(Super. Ct. No. VCF284160)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Darryl B. Ferguson, Judge.

Anne V. Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Catherine Chatman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Over the course of approximately 30 hours, defendant James Bailey engaged in a crime spree that commenced with the theft of an idling car containing an infant and ended with the theft of a motorcycle helmet from a dealership the next day. Defendant was arrested shortly after stealing the helmet and subsequently charged with kidnapping a child in violation of Penal Code section 207, subdivision (a), (count 1);[1] two counts of vehicle theft in violation of Vehicle Code section 10851, subdivision (a), (counts 2 & 3); receiving stolen property (vehicle) in violation of section 496d, subdivision (a), (count 4); burglary in violation of section 459 (count 5); and petty theft with a prior in violation of section 666 (count 6). It was further alleged that defendant suffered a prior conviction for receiving stolen property (vehicle) (§ 666.5) and served two prior prison terms (§ 667.5, subd. (b)). Defendant was convicted by a jury of counts 1, 2, 3, 5, and 6, and in a bifurcated proceeding, the jury found the enhancement allegations under sections 666.5 and 667.5, subdivision (b), true. Defendant was sentenced to 11 years for kidnapping (upper term), one year for each of the two vehicle theft counts, and eight months for burglary. The petty theft with a prior was stayed pursuant to section 654, and defendant received one year for each of the two prior prison term enhancements, for a total determinate prison term of 15 years 8 months.

On appeal, defendant argues the trial court erred in failing to modify sua sponte the pattern jury instruction for kidnapping a child under 14 years old (CALCRIM No. 1201). Defendant contends the instruction should have been modified to clarify that (1) the specific intent required—movement of a child under 14 years old a substantial distance "*for an illegal purpose or with an illegal intent*"—be directed *at* the victim and (2) he had to have known the victim was in the car. (§ 207, subd. (e), italics added.) Alternatively, defendant argues his trial counsel rendered ineffective assistance of

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

counsel in failing to request those modifications to CALCRIM No. 1201. Finally, he argues counsel rendered ineffective assistance of counsel in failing to move for exclusion of his statements to the police as involuntary.

The People respond it would have been improper for the trial court to instruct the jury that the illegal purpose or intent had to be directed at the victim because such an instruction is contrary to law and, read together, the jury instructions adequately addressed the requisite mental state required to commit kidnapping. The People also contend defendant's statements to police were not coerced and were voluntary, and his trial counsel could reasonably have thought he was properly advised of his rights and waived them.

We reject defendant's argument that the illegal purpose or intent had to be directed at the victim, we find any instructional error as to the requirement of knowledge harmless under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*), and we reject defendant's claim his statements to police were coerced and, therefore, involuntary. Accordingly, we affirm the judgment.

## FACTUAL SUMMARY

On June 6, 2013, Santos N., a one-month old-infant, was secured in his rear-facing infant seat in the back seat of his parents' car, a 2009 Dodge Charger. It was 4:30 a.m. and his mother had gone back into their apartment to retrieve the father's work socks. The father then realized he forgot his lunch and went back into the apartment to get it, leaving Santos momentarily alone in the car. The key was in the ignition, the engine was running, the windows were rolled up, and the driver's side door was sufficiently ajar to keep the interior cabin light on. Defendant hopped in the driver's seat, backed out, made a U-turn, and took off. Santos's father heard the car peeling out from inside the apartment and ran out to the car, which was still backing up. He tried to take ahold of the door to open it, but the doors automatically lock when the car is put into drive. He

banged on the car while yelling his baby was in the car and for the person to leave his baby.[2]

Defendant then drove from the apartment in Tulare to Corcoran, a drive which takes approximately 20 to 25 minutes. He abandoned the car in front of a house in Corcoran and stole a bicycle that was leaning up against the house. Approximately one mile down the road, he came upon a motorcycle parked in a carport with the key left in the ignition and he abandoned the bicycle for the motorcycle.

The high temperature that day was 94 degrees. Fortunately, a woman came out of the house in Corcoran at approximately 6:00 a.m. and discovered the abandoned car in her driveway. Santos was thereafter reunited with his parents, unharmed.

The next day, defendant rode the stolen motorcycle to a dealership in Tulare. After looking at motorcycle helmets for approximately 10 minutes, defendant walked out the door with a helmet without paying for it. He was pursued by an employee, who slapped at his back as he was riding away. The employee fell to the street and as he was getting up, he saw defendant's bike flipping up, as it had just hit the curb on the other side of the street. While defendant was still in the process of getting up, the employee went across the street and retrieved the stolen helmet. Defendant was subsequently arrested at the scene.

During questioning by detectives at the police station, defendant confessed to stealing the car, bicycle, motorcycle, and helmet, but denied there was a baby in the car. At trial, his defense was limited to cross-examining the prosecution's witnesses. The main trial issue was the kidnapping charge and whether defendant knew the baby was in the car, either initially or at some point prior to abandoning the car.

---

**2**      The father testified at trial through a Spanish interpreter.

## I. Instructional Errors by Trial Court

### A. Standard of Review

We review allegations of instructional error de novo.  (*People v. Waidla* (2000) 22 Cal.4th 690, 733; *People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)  "In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case."  (*People v. Martinez* (2010) 47 Cal.4th 911, 953.)  "'That obligation includes instructions on all of the elements of the charged offense,'" (*People v. Rubalcava* (2000) 23 Cal.4th 322, 334), and the failure to so instruct is a violation of due process (*Middleton v. McNeil* (2004) 541 U.S. 433, 437, *per curiam*; *People v. Mills* (2012) 55 Cal.4th 663, 677).  Conversely, trial courts are not required to give "'pinpoint' instructions" sua sponte; such instructions must be requested.  (*People v. Saille* (1991) 54 Cal.3d 1103, 1119, 1121; *People v. Anderson* (2011) 51 Cal.4th 989, 996–997.)

"[I]nstructions are not considered in isolation.  Whether instructions are correct and adequate is determined by consideration of the entire charge to the jury."  (*People v. Holt* (1997) 15 Cal.4th 619, 677.)  "If the charge as a whole is ambiguous, the question is whether there is a '"reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.'"  (*Middleton v. McNeil*, *supra*, 541 U.S. at p. 437.)  Jurors are presumed to have understood and followed the trial court's jury instructions.  (*People v. Sandoval* (2015) 62 Cal.4th 394, 422.)

### B. Movement of Child with Illegal Intent or for Illegal Purpose

Defendant was charged with kidnapping a child in violation of section 207, which provides in relevant part:  "(a) Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping.  [¶] … [¶]  (e) For purposes of those types of kidnapping

requiring force, the amount of force required to kidnap an unresisting infant or child is the amount of physical force required to take and carry the child away a substantial distance for an illegal purpose or with an illegal intent." (§ 207, subds. (a), (e).)

The trial court instructed the jury pursuant to CALCRIM No. 1201, the pattern instruction for the kidnapping charge. That instruction provided in relevant part:

"The defendant is charged in Count 1 with kidnapping a child, violation of Penal Code Section 207. To prove that the defendant is guilty of this crime the People must prove:

"1, the defendant used physical force to take and carry away an unresisting child.

"2, the defendant moved the unresisting child a substantial distance.

"3, the defendant moved the child with an illegal intent or for an illegal purpose.

"And 4, the child was under 14 years old at the time of the movement."

Simple kidnapping is a general intent crime. (*People v. Davis* (1995) 10 Cal.4th 463, 519; *People v. Bell* (2009) 179 Cal.App.4th 428, 435, fn. 2; *People v. Magpuso* (1994) 23 Cal.App.4th 112, 118.) Kidnapping an unresisting infant or child, however, involves the additional intent element of moving a child "for an illegal purpose or with an illegal intent." (§ 207, subd. (e); *In re Michele D.* (2002) 29 Cal.4th 600, 612 (*Michele D.*).) This requirement was originally read into the statute by the California Supreme Court in *People v. Oliver* (1961) 55 Cal.2d 761, 768, to prevent the potential prosecution of someone who moves a child with a lawful intent or purpose, such as a good Samaritan moving a child out of harm's way. In 2002, the California Supreme Court addressed the illegal purpose or intent requirement and held it was an element of the offense that must be proven by the prosecution. (*Michele D.*, *supra*, at p. 612). The kidnapping statute was subsequently amended by the Legislature in 2004 to include that element. (§ 207, subd. (e).)

Defendant asserts on appeal that the illegal purpose or intent must have been directed *at* Santos and the trial court had a duty to sua sponte instruct the jury to that

6.

effect.  Given the California Supreme Court's decision in *People v. Hill* (2000) 23 Cal.4th 853, 858 (*Hill*), we find this argument without merit.

While *Hill* did not address a single victim situation in which the defendant claimed lack of knowledge the victim was in the vehicle, its holding still controls notwithstanding that distinction.  That is so because in *Hill,* the court held that movement of a child "for an illegal purpose or with an illegal intent" under section 207, subdivision (e), is satisfied so long as the movement is "'carried out as the direct result of the intent to commit *a* crime.'"  (*Hill, supra*, 23 Cal.4th at p. 858, italics added; *Michele D., supra*, 29 Cal.4th at p. 612.)  The crime in question need not be directed *at* the kidnapping victim.  (*Hill, supra*, at p. 858.)  We therefore reject the contention that the trial court erred in failing to modify the instruction sua sponte to state that the illegal purpose or intent must be directed at the child.

It has long been recognized that the "element was created … to ensure that an innocent carrying away of a very young victim would not result in a kidnapping conviction."  (*People v. Jones* (2003) 108 Cal.App.4th 455, 466.)  Here, defendant was not engaged in lawful conduct when he stole the car, and his movement of Santos was not "for a good or innocent purpose."  (*People v. Campos* (1982) 131 Cal.App.3d 894, 899.)  As a result, his movement of Santos during the course of the car theft suffices to establish liability, assuming defendant had knowledge Santos was in the car (discussed in the next section), and that modifying the instruction to state that the illegal intent or purpose must have been directed *at* Santos would have been a misstatement of the law.  (*Hill, supra*, 23 Cal.4th at p. 858.)

C.    **Knowledge of Victim's Presence in Vehicle**

Defendant's knowledge that Santos was in the car was the central trial issue and defendant contends the jury should have been instructed on the requirement of knowledge.  "Generally, '"[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." … ' [Citation.]

In other words, there must be a union of act and wrongful intent, or criminal negligence. [Citations.] 'So basic is this requirement that it is an invariable element of every crime unless excluded expressly or by necessary implication.' [Citation.] In addition, Penal Code section 26 provides that a person is incapable of committing a crime where an act is performed in ignorance or mistake of fact negating criminal intent; a crime cannot be committed by mere misfortune or accident. [Citation.]" (*People v. Coria* (1999) 21 Cal.4th 868, 876.)

Prior to jury selection, the trial court stated it did not matter if defendant knew the baby was in the car or not, and that appears to have been a misstatement of the law, as kidnapping is not a strict liability offense.[3] (See *People v. Davis*, *supra*, 10 Cal.4th at p. 519 [simple kidnapping is a general intent crime]; *People v. Magpuso*, *supra*, 23 Cal.App.4th at p. 118 [same]; see also *Michele D.*, *supra*, 29 Cal.4th at p. 612 [kidnapping unresisting infant or child involves additional element of movement of the child with an illegal intent or for an illegal purpose].) However, the trial court did not repeat this statement to the jury. In addition to instructing on the elements of kidnapping a child (CALCRIM No. 1201), the trial court read the pattern instruction, CALCRIM No. 252, on the requirement of "proof of the union or joint operation of act and wrongful intent." The instruction defined both general intent and specific intent, and informed the jury that kidnapping was a specific intent crime. (*Michele D.*, *supra*, at p. 612; *People v. Oliver*, *supra*, 55 Cal.2d at pp. 764–768.) As a result, the jury was instructed regarding intent, the need for a union of act and wrongful intent, and the elements of the offense. (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1250.) We need not determine whether these instructions together were adequate, as the People contend, because even assuming

---

[3]     "Strict liability offenses eliminate the 'requirement of *mens rea*; that is, the requirement of a "guilty mind" with respect to an element of a crime.'" (*People v. Rubalcava*, *supra*, 23 Cal.4th at p. 331.)

it was error not to instruct the jurors defendant had to have known the baby was in the car, such error was harmless on this record.[4]

The car was stolen at approximately 4:30 in the morning in Tulare. Santos's father had left the car door sufficiently ajar to keep the interior light on, illuminating the cabin. The car's cabin was small and the interior was dark in color. In contrast, although rear-facing, the infant seat was light in color and it noticeably protruded into the space between the two front seats, as evidenced by the prosecution's exhibits. After jumping in, defendant backed up the car, with Santos's father pounding on it, and then drove approximately 20 to 25 minutes to Corcoran. Although defendant repeatedly denied there was a baby in the car during interrogation, the evidence demonstrated there was and the jury necessarily found so. In his recorded statement, which the jury considered, defendant's denial there was a baby in the car was juxtaposed against his statement he looked in the back. Defendant also stated he wiped the car for fingerprints. Given the obviousness of the infant seat in the car, the length of time defendant was in the car with the baby, and defendant's implausible denial there was a baby in the car despite stating he looked in the back and he wiped off his fingerprints, coupled with the obvious focus on defendant's knowledge of the baby's presence by both parties during trial, we find any error "harmless beyond a reasonable doubt." (*Chapman*, *supra*, 386 U.S. at p. 24.)

---

**4** The state standard requires us to consider "whether there is a 'reasonable probability' that a result more favorable to the defendant would have occurred absent the error." (*People v. Aranda* (2012) 55 Cal.4th 342, 354.) The federal standard requires us to find "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (*Id.* at p. 367.) We do not determine whether the alleged error in this case is reviewable under the state's *Watson* standard (*People v. Watson* (1956) 46 Cal.2d 818, 836) or the federal *Chapman* standard (*Chapman*, *supra*, 386 U.S. at p. 24) because applying the stricter *Chapman* standard, we find the error "harmless beyond a reasonable doubt." (*Ibid.*; see *People v. Sandoval*, *supra*, 62 Cal.4th at pp. 421–422; *People v. Wilkins* (2013) 56 Cal.4th 333, 348–349; *People v. Jones* (2013) 57 Cal.4th 899, 967; *People v. McDonald* (2015) 238 Cal.App.4th 16, 27.)

9.

## II.  Ineffective Assistance of Counsel

Finally, defendant argues his trial counsel's failure to challenge the admission of his statements to detectives constituted ineffective assistance of counsel.[5]  Defendant bears the burden on appeal of proving ineffective assistance of counsel.  (*People v. Mattson* (1990) 50 Cal.3d 826, 876–877.)  "To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings."  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003; see generally *Strickland v. Washington* (1984) 466 U.S. 668, 687–694.)  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'  [Citations.]"  (*People v. Cunningham*, *supra*, at p. 1003.)  "[I]n assessing a Sixth Amendment attack on trial counsel's adequacy mounted on *direct appeal*, competency is *presumed* unless the record *affirmatively* excludes a rational basis for the trial attorney's choice.  [Citations.]"  (*People v. Musselwhite*, *supra*, 17 Cal.4th at p. 1260; accord, *People v. Stewart* (2004) 33 Cal.4th 425, 459.)

Defendant's trial counsel did not object to the admission of defendant's statement to detectives on the ground of involuntariness or any other ground.  As a result, the claim is forfeited on appeal.  (*People v. Williams* (2010) 49 Cal.4th 405, 435; *People v. Maury* (2003) 30 Cal.4th 342, 387–388.)  Even if we were to consider the claim on its merits, however, defendant's challenge fails.

---

[5]    Having rejected defendant's instructional challenges, we do not reach his argument that his trial counsel's failure to request those modifications also constituted ineffective assistance of counsel.

10.

After being taken into custody, but prior to interrogation, defendant was read his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), he said he understood them, and he agreed to talk with detectives. Trial counsel did not challenge the admission of defendant's statements; however, on appeal, defendant argues his statements were coerced because detectives lied and made impliedly threatening and promising statements, and because he was delusional and hallucinatory during the interrogation.

"The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion" and "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." (*Colorado v. Connelly* (1986) 479 U.S. 157, 167, 170; *People v. Cunningham* (2015) 61 Cal.4th 609, 643.) "The test for the voluntariness of a custodial statement is whether the statement is '"the product of an essentially free and unconstrained choice"' or whether the defendant's '"will has been overborne and his capacity for self-determination critically impaired"' by coercion. [Citation.] No single factor is dispositive; 'rather courts consider the totality of [the] circumstances.' [Citations.] Relevant considerations include '"the crucial element of police coercion [citation]; the length of the interrogation [citation]; its location [citation]; its continuity" as well as "the defendant's maturity [citation]; education [citation]; physical condition [citation]; and mental health."' [Citations.]" (*People v. Cunningham, supra*, at pp. 642–643.) "'In assessing allegedly coercive police tactics, "[t]he courts have prohibited only those psychological ploys which, under all the circumstances, are so coercive that they tend to produce a statement that is both involuntary and unreliable."' [Citations.]" (*Id.* at p. 643.)

We do not find the interrogation in this case even arguably coercive. It occurred in a police station interview room during the daytime and was not lengthy, lasting only 85 to 95 minutes, approximately. Defendant was initially interrogated for between 75 and

11.

80 minutes, at which time a "stale mate" was reached. The two detectives and defendant exited the interview room, and defendant reinitiated the conversation regarding the case when he and one of the detectives stopped at the drinking fountain. The second part of the interrogation lasted 10 to 15 minutes.

At the time, defendant was 28 years old, with no apparent health issues beyond the mental health concerns addressed below. He was born in California, earned a high school diploma, and is of normal intelligence according to the psychiatrist who evaluated him. Defendant was also not new to the criminal justice system, having spent time in the California Youth Authority as a juvenile and in state prison as an adult.

Defendant was provided water to drink during the interrogation, and review of the transcript of the interrogation does not reveal any "particularly harsh or accusatory" tone to the questioning. (*People v. Cunningham*, *supra*, 61 Cal.4th at p. 644.) The detectives neither threatened defendant nor promised him any benefits, and his assertion that threats were implied because he was questioned about his section 290 registration status is not supported by the record. (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1088; *People v. Williams*, *supra*, 49 Cal.4th at p. 443; *People v. Ray* (1996) 13 Cal.4th 313, 339–340.) Moreover, although detectives engaged in deception regarding having access to DNA results that would link him to the stolen car, police are not prohibited from using deceptive tactics so long as the tactics are not "'"'so coercive that they tend to produce a statement that is both involuntary and unreliable."'" [Citations.]" (*People v. Cunningham*, *supra*, at p. 643; *People v. Williams*, *supra*, at p. 443; *People v. Ray*, *supra*, at pp. 339–340; *People v. Mays* (2009) 174 Cal.App.4th 156, 164–165.) Here, while the detectives used tactics that were deceptive, they were not coercive.

Finally, there is no suggestion in the record that the detectives exploited defendant's mental state to produce incriminating statements. (*People v. Cunningham*, *supra*, 61 Cal.4th at p. 644.) Although defendant stated he injected methamphetamine that morning and had been up for two weeks, and his statements during the first part of

12.

the interrogation were interspersed with bizarre and nonsensical religious references, "there is no evidence his 'abilities to reason or comprehend or resist were in fact so disabled that he was incapable of free or rational choice.'" (*Id.* at p. 645.) To the contrary, defendant responded to the questions detectives asked him and although he was evasive, his answers tracked their questions. During the second part of the interrogation, which he initiated, he was notably more cooperative and his answers were clearer and more detailed.[6]

We find defendant's statements were not coerced and were, therefore, voluntary. Accordingly, we reject his claim that counsel was ineffective in failing to move to exclude the statements.

## DISPOSITION

The judgment is affirmed.

_____
KANE, J.

WE CONCUR:


_____
HILL, P.J.


_____
GOMES, J.

---

[6] We note defendant's competency was evaluated following a request from his trial counsel pursuant to section 1368, and he was found competent to stand trial. The court-appointed psychiatrist concluded he was of normal intelligence and although he did have some mental health issues, the level of ignorance he claimed during the evaluation "was not believable" and "a sham."

13.